THE LAKE SHORE & MICHIGAN SOUTHERN RAILWAY COMPANY v. THE PEOPLE OF THE STATE OF MICHIGAN.

*Taxing stock of railway corporations—Res judicata—Estoppel of State—Consolidation of companies—Decision on the merits—Interest.*

The result of a suit for the taxes of particular years is not *res judicata* in subsequent suits between the same parties for taxes of other years, and the decisions upon legal questions arising in the first case are important only as precedents.

Where a statute requires a corporation to be taxed at a certain rate upon its capital and on loans employed in the State, and the Auditor General merely computes the amount of the tax on the basis of reports made to him by the company, but without passing judgment upon their correctness, the State is not precluded from enforcing payment of the correct amount.

The State is not concluded by the mere non-action of one of its officers, if he has not ascertained the facts and passed judgment.

Where both parties desire, and the public interest demands, that a court pass upon the merits of a case, and preliminary objections do not go to the jurisdiction, the main case may be disposed of.

A railway company is taxed, not for the face of the bonds upon which it negotiates a loan, but for the amount of the loan.

Stock dividends and issues of stock proportioned to that previously held by shareholders, must stand on the same footing with original stock and should be taxed as far as it is considered-paid in.

The general railroad law, in permitting the consolidation of railroad companies within the State with others beyond its boundaries, contemplates leaving the domestic company in its original position as to stock and loans, and annexing to its capital and loans those additions which are made proportional to the original amounts.

Interest upon money withheld is allowed either because there is an express or implied promise to pay it, or as damages; but no promise can be implied until the principal falls due, and it is not allowable as damages if there has been no final understanding as to how much is to be paid.

Interest upon the amount of a tax which it is claimed should have been paid, cannot be allowed where the amount claimed has never been levied and is not therefore in default.

Error to Wayne.    Submitted Jan. 26.    Decided June 15.

46 MICH. —13

Assumpsit. The declaration is as follows:

STATE OF MICHIGAN. }
   County of Wayne. } ss.

*In the Circuit Court for the County of Wayne:*

The People of the State of Michigan, by Otto Kirchner, their Attorney General, complain of the Lake Shore and Michigan Southern Railway Company, a corporation organized and existing under and by virtue of the laws of the States of New York, Pennsylvania, Ohio, Michigan, Indiana, and Illinois, defendant, who has been heretofore duly summoned to answer the plaintiffs of a plea of trespass on the case upon promises, thereupon says:

That in the year 1846 the Michigan Southern Railroad Company was organized under Act No. 113 of the Laws of the State of Michigan of the year 1846, and by virtue of said act thereafter became the owner of a railroad running from Monroe, in the State of Michigan, through Adrian to the line of the State of Indiana, one hundred and twenty-nine (129) miles in extent, and also of a railroad from Palmyra to Jackson, in said State, forty-four (44) miles in length, together with all the usual appurtenances of such railroads, and also of certain steamboats provided for in said act. That section 31 of said act provides that "the said company shall pay to the State an annual tax of one-half of one per cent. upon its capital stock paid in, including the five hundred thousand dollars of purchase money paid or to be paid to the State, until the first day of February, 1851, and thereafter an annual tax of three-fourths of one per cent. upon its capital stock paid in, including the five hundred thousand dollars of purchase money aforesaid, and also upon all loans made to said company for the purpose of constructing said railroad, or purchasing, constructing, chartering, or hiring of steamboats authorized by this act to be held by said company, which tax shall be paid in the last week in January in each year to the State Treasurer."

That by virtue of Act number 138 of the Laws of Michigan for 1855, said Michigan Southern Railroad Company on the 25th day of April, 1855, became consolidated with a corporation of the State of Indiana, known as the Northern Indiana Railroad Company, thereby forming a new corporation, known as the Michigan Southern and Northern Indiana Railroad Company. Section 3 of said act of consolidation provides that "The said corporations

to be organized by virtue of this act shall continue subject to the same rate of tax as though such consolidation shall not take place, and the amount of its capital and loans thereafter upon which such taxation shall be paid shall be such portion of the whole of its capital and loans as is actually employed within the State of Michigan, to be ascertained on or before the first day of January in each year by the Auditor General of this State from the annual reports of such corporation, or from such other reports on oath as he may deem necessary for such purpose to be ordered by him from the office of such corporation." That by virtue of two consolidations made under and in accordance with the general laws of the State of Michigan, one made the 6th day of April, 1869, and the other the 22d day of June, 1879, the first between said Michigan Southern and Northern Indiana Railroad Company and the Lake Shore Railway Company, another corporation, forming a new corporation called the Lake Shore and Michigan Southern Railway Company, the second between said Lake Shore and Michigan Southern Railway Company and the Buffalo and Erie Railroad Company, another corporation, forming by their union the said corporation defendant hereto ; said defendant became possessed of the railroad and all other property formerly belonging to said Michigan Southern Railroad Company, and received by said Michigan Southern and Northern Indiana Railroad Company from said Michigan Southern subject to the duty of paying taxes to the State of Michigan as provided in said act under which said Michigan Southern Railroad Company was organized, and as provided in said act by which said Michigan Southern and Northern Indiana Railroad Companies were consolidated, and subject also to all debts, liabilities, and duties of said Michigan Southern and Northern Indiana Railroad Company which existed prior to its said consolidation into said defendant. And said plaintiffs aver that said Michigan Southern and Northern Indiana Railroad Company by virtue of its acceptance of said act, under which it was formed on said 25th of April, 1855, and in consideration of the rights it gained thereby, promised and was bound to pay to the State of Michigan a tax of three-fourths of one per cent. per annum on such portion of the whole of its capital and loans, as was actually employed in the State of Michigan; and promised and was bound to report to the Auditor General of said State, yearly, the amount of its capital and loans which was employed in the said State. And said plaintiffs aver that said Michigan Southern and Northern

Indiana Railroad Company did not report to said Auditor General, from year to year, the full amount of its capital and loans actually employed in the State of Michigan, and did not pay the whole amount of the required tax upon its capital and loans actually thus employed. On the contrary, in the year 1862, and every successive year thereafter, up to and including the year 1869, said Michigan Southern and Northern Indiana Railroad Company actually employed in the State of Michigan three million dollars of its capital, and three million dollars of loans which were never reported to the Auditor General of said State for taxation, and upon which it always neglected and refused to pay the tax due as aforesaid. In consequence of said premises, said Michigan Southern and Northern Indiana Railroad Company was, at the time its property and rights passed to defendant by said consolidation, indebted to the State of Michigan for said unpaid taxes and interest thereon, in the sum of five hundred thousand dollars, which said indebtedness defendant assumed and promised to pay in and by the law under which it was incorporated and became entitled to the property of said Michigan Southern and Northern Indiana Railroad Company, and in consideration of the rights it gained by said consolidation. And plaintiffs aver that defendant from and after the said consolidation of June 22, 1869, in consideration of the rights gained by such consolidation, promised and was bound to pay to the State of Michigan an annual tax of three-fourths of one per cent., upon such portion of its capital and loans as was actually employed in the State of Michigan, and for the same consideration promised and was bound to report to the Auditor General of said State, yearly, the amount of its capital and loans which was employed in said State. And said plaintiffs aver that said defendant has not reported to said Auditor General, from year to year, the full amount of its capital and loans actually employed in the State of Michigan, and has not paid the whole amount of the required tax upon its capital and loans actually thus employed. . *On the contrary,* in the year 1869, and every successive year thereafter, up to the time when this suit was begun, said defendant actually employed five millions of its capital stock and four millions of its loans in the State of Michigan, which it has never reported to said Auditor General for taxation, and upon which it has constantly neglected and refused to pay the tax due as aforesaid, and the amount of the tax thus due from defendant arising since and including said year 1869, together with interest thereon, is the sum of five hundred thousand dol-

lars.    And in consideration of said premises and its liabili-
ties as hereinbefore stated on the first day of April, 1878,
said defendant faithfully promised said plaintiffs to pay them
the full sum of one million dollars, due as aforesaid.    Yet
the said defendant has disregarded its said promises, and has
not (although often requested so to do), paid said sum of
money, or any part thereof, to the plaintiffs' damage, one
million dollars, and therefore they bring suit, etc.

OTTO KIRCHNER,

*Attorney General.*

The cause was tried before a jury and evidence was given
of which the substance was:    1. That the Michigan South-
ern Railway Company was created and became a corporation
under Act 113 of 1846, and that afterwards, under Act 138 of
1855, the Michigan Southern and Northern Indiana Railroads
were consolidated under the name of the Michigan Southern
and Northern Indiana Railroad Company.

2. That in 1869, the Michigan Southern and Northern
Indiana Railroad Company under statutes of Michigan, Ohio,
Pennsylvania, and New York, became consolidated with cer-
tain other corporations existing under the laws of Ohio,
Pennsylvania and New York, for the purpose of construct-
ing and maintaining certain railroads between the cities of
Chicago, Toledo, and Buffalo under the name of the Lake
Shore and Michigan Southern Railway Company, the cor-
poration defendant in this suit.

3. That on the consolidation of the Michigan Southern
and Northern Indiana Railroad Companies, shares of the
corporate stocks of the new company were exchanged with
the holders thereof for an equal amount, at par value, of the
stock of the original companies surrendered; and that a sim-
ilar exchange of stock was made upon the subsequent con-
solidations.

4. That the amount of the capital stock issued by the
Michigan Southern Railroad Company, as fully paid prior
to the consolidation with the said Northern Indiana Railroad
Company, was $2,625,600, and that after such consolidation
and before 1868, additional shares of stock were issued on

account of the capital of said company issued in Michigan to the amount of $49,100.

5. That in 1868 the Michigan Southern and Northern Indiana Railroad Company declared a stock dividend of ten per cent. upon its then existing capital stock, and issued the same to its then existing stockholders, as fully paid.

6. That in 1871 the Lake Shore and Michigan Southern Railway Company issued to its then existing stockholders, stock to the amount of 40 per cent. of the stock then held by each of its said stockholders, and that for such stock issued, said company received in cash $33\frac{1}{3}$ per cent. of the par value thereof, and without any other consideration thereof, issued the same as fully paid.

7. That subsequent to the said stock dividend of 10 per cent in 1868, and of the issue of said stock in 1871, the said corporation continued to pay taxes to the State of Michigan on account of its capital stock invested in Michigan, upon the same basis as it had paid prior to the issue of such stock, viz.: Upon a basis of $2,625,600 increased by $49,100, making $2,664,700; and that it has never paid any taxes to the State of Michigan on account of the increase of its capital stock, made by said stock dividend made in the year 1868, and the said issue of stock made in the year 1871.

8. That said Michigan Southern and Northern Indiana Railroad Company made a dividend to its stockholders out of its net earnings on May 1st, 1865, of three and one half per cent., and that after such dividend, said company made no other dividend until the close of 1868; that during the period from the 1st of May, 1865, to the close of 1868, said company actually earned a surplus over its operating expenses of $2,338,662, and that such surplus earnings were used for the purpose of construction, equipment and for contribution to the sinking fund, and that the sum of $1,178,267 thereof was used for construction and for new equipment, and that the stock dividend made in 1868, was. to partially compensate the stockholders for the disposition which had been so made of surplus earnings. That the construction, on account of which said money was used, was chiefly outside

the State of Michigan, and that the amount expended for permanent improvements on the railroad in Michigan during the period from 1862 to the time of the making of said stock dividend in 1868, was $46,080, besides what was expended for side tracks.

9. That the bonds issued by the said Michigan Southern Railroad Company for the purpose of obtaining money to be used for constructing said railroad, and purchasing, constructing and chartering, or hiring of steamboats, authorized by its charter to be held, were sold by the former company at an aggregate discount of $185,459.34; that none of such bonds were sold for more than their par value, and that no taxes have been paid to the State of Michigan on account of the amount of such discount, since the decree in the suit between the State and the Michigan Southern and Northern Indiana Railroad Company, hereafter mentioned.

10. That the Michigan Southern Railroad Company before consolidation with the Northern Indiana Railroad Company, issued bonds in form negotiable, called Jackson Branch bonds, which said bonds were executed with the intent and purpose of being used to obtain money for constructing the road of said company; that it loaned $250,000 in amount of such bonds to one Dwight, and received as security for such loan his, Dwight's, agreement, to return the said bonds at a time in said agreement specified; and as collateral thereto, bonds of the Chicago & Mississippi Railroad Company, to the amount of $337,000, and subsequently the said Dwight could not and did not return said Jackson Branch bonds so loaned to him, and the said $337,000 of the Chicago & Mississippi Railroad bonds were taken by the said Michigan Southern Railroad Company in payment for the aforesaid $250,000 of Jackson Branch bonds; and that the said $337,-000 of the Chicago & Mississippi Railroad Company bonds eventually proved worthless and nothing has ever been realized thereon; and no taxes have been paid to the State of Michigan on account of the said $250,000 of Jackson Branch bonds, so-called, since the decree hereafter mentioned.

11. That on the 18th of August, 1862, the Michigan Southern and Northern Indiana Railroad Company commenced suit by bill of complaint in the Wayne circuit court against Langford G. Berry, then Auditor General of the State of Michigan, in his official capacity, to restrain him from issuing a warrant to collect taxes alleged to be due from said Michigan Southern and Northern Indiana Railroad Company, to the State of Michigan, for the years 1858, 1859, 1860 and 1861, on account of the item before mentioned, $185,459.34, representing as before stated, the discount on bonds issued by said Michigan Southern Railroad Company, and said item of $250,000 represented by said Jackson Branch bonds, as hereafter stated; and that a decree was obtained restraining him accordingly.

12. That from and including 1865 up to the time it became consolidated into the Lake Shore and Michigan Southern Railway Company, in 1869, the Michigan Southern and Northern Indiana Railroad Company regularly made

---

*EXHIBIT D.

OFFICE OF THE MICHIGAN SOUTHERN AND }
NORTHERN INDIANA R. R. Co.            }
TOLEDO, OHIO, January 23, 1866.

*To the Honorable Secretary of State*
*of the State of Michigan.*

The Michigan Southern and Northern Indiana Railroad Company, in conformity with the requirements of the act entitled, "An Act to authorize the sale of the Southern Railroad and to incorporate the Michigan Southern Railroad Company," approved May 9, 1846, and of the act amendatory thereto, approved March 28, 1850, and of the act entitled "An Act to authorize the Michigan Southern Railroad Company to consolidate with the Northern Indiana Railroad Company," approved February 13, 1855, respectfully submit the following REPORT for the preceding year to the first day of December, 1865.

1. The length of their road and branches in the States of Michigan, Ohio, Indiana and Illinois, including leased lines operated by them, and exclusive of 4 miles from White Pigeon to Constantine, now let to other parties, is 514 miles.

2. The cost of construction of their lines was $13,619,184.89.

3. The indebtedness on account of construction: none.

. 4. Other indebtedness is as follows: funded debt $8,536,500; floating debt $210,000.

5. The amount of capital stock outstanding is $10,424,500.

6. The amount of capital paid in is $10,424,500.

7. The loans made for the purpose of constructing the railroads of the consolidated company, or purchasing, constructing, chartering or hiring steamboats amounts, as heretofore reported, to $7,653,000.

reports to the Secretary of State of the said State of Michigan, in the form and substance, so far as regards the questions of this case, of Exhibit D, hereto attached,* which exhibit is a copy of the report of said company made for the fiscal year 1865 ; and that it filed a report for the year 1869 up to May 31st, 1869, when it became consolidated into the Lake Shore and Michigan Southern Railway Company, by which it appeared that subsequent to its last previous report the capital stock of the said Michigan Southern and Northern Indiana Railroad Company had been increased by an amount equal to the stock dividend of ten per cent., made as aforesaid in 1868 ; but said report did not disclose in what manner nor for what purpose, nor for what consideration such increase had been made.

13. That after the consolidation of such company in the year 1869 into the Lake Shore and Michigan Southern Railway Company, said latter company regularly filed its reports with the Secretary of State as required by its charter, for each year up to the comencement of this suit.   Said reports were similar in form and substance to the report for the

---

8. Dividends last year—two of five per cent. each on the guaranteed stock, and one of three-and-a-half on the common stock.

9. The receipts from freight were $2,559,194.87; from passengers $2,116,113.96; from all other sources an operating account $210,404.92.

10. The number of through passengers was 148,336, way passengers 787,041.

11. Expenditures for repairs of road $603,617.76; repairs of engines and cars $465,855.68; other operating expenses $1,687,794.66; for construction, none.

12. Number of engines 98; of passenger cars 100; of freight cars about 1350; of other cars 25.

13. Average number of men employed last year about 2200.

14. Number of miles run by passenger trains about 850,000; by freight trains about 1,150,000; by other trains about 240,000.

15. Under the third section of the consolidation act they report that the portion of their capital and loans actually employed in the State of Michigan is $3,612,255.27.   But under the decision of the Supreme Court of the State of Michigan in January, 1862 and of the Circuit Court of Wayne County in January, 1865, the company are held liable to the specific tax of three-fourths of one per cent. upon $4,739,240.16.

All of which is respectfully submitted.

E. B. PHILLIPS, } Directors.
ALBERT KEEP, }

year 1872, marked Exhibit F.† The said report so filed for the year 1872 disclosed that the capital stock of said company had been increased since its prior report by the amount of 40 per cent., sold and issued to its stockholders as hereinbefore stated. But said report did not disclose in what manner nor for what purpose nor for what consideration such increase had been made.

14. That all reports so made by the Michigan Southern Railroad Company, and by the Lake Shore and Michigan Southern Railway Company, stated the amount of capital stock and loans actually used in Michigan, and liable to pay to the State of Michigan the specific taxes of three-fourths of one per cent., imposed by the charter of said Michigan Southern Railroad Company, in the exact language used in

---

†EXHIBIT F.

OFFICE OF THE LAKE SHORE AND
MICHIGAN SOUTHERN RAILWAY COMPANY.
CLEVELAND, O., January 1873.

*To the Honorable the Secretary of State of Michigan.*

The Lake Shore and Michigan Southern Railway Company (successors to the Michigan Southern and Northern Indiana Railroad Company), in conformity with an act entitled ''An act to authorize the sale of the Southern Railroad and to incorporate the Michigan Southern Railroad Company,'' approved May 9, 1846, and of the Act amendatory thereto approved March 28th, 1850, and of the Act entitled, An act to authorize the Michigan Southern Railroad Company to consolidate with the Northern Indiana Railroad Company, approved February 13th, 1855, respectfully submit the following report for the year ending December 1st, 1872.

*First.* The length of their roads and branches in the State of Michigan, Ohio, (west of Toledo), Indiana and Illinois including leased roads operated by them, is 608 miles, (same as last report). This includes the following Michigan corporations making reports to the State.

| | |
|---|---|
| Detroit, Monroe and Toledo | 65 miles. |
| Kalamazoo and White Pigeon | 36 " |
| Kalamazoo, Allegan and Grand Rapids | 58 " |
| Erie and Kalamazoo | 33 " |

*Second.* The cost of construction of their various roads and branches as enumerated was ........ $14,654,881.48

*Third.* Indebtedness on account of construction, none.

*Fourth.* Other indebtedness on the roads west of Toledo enumerated in Section 1, is .......... $10,313,000

*Fifth.* Amount of capital stock of the consolidated company (Buffalo to Chicago) December 1st, 1872, was .......... $50,000,000

*Sixth.* Amount of capital stock paid in December 1st, 1872, was $50,000,000

*Seventh.* The loans made for the purpose of constructing the railroads of the consolidated Michigan Southern and Northern Indiana Railroad Company or for purchasing, constructing, chartering, or hiring steamboats amounted, as heretofore reported, to .......... $7,653,000

that respect in the reports of said Michigan Southern and Northern Indiana Railroad Company for the years 1865 and 1872, of which Exhibits D and F are copies. That the said reports so made by the Michigan Southern and Northern Indiana Railroad Company, and the said Lake Shore and Michigan Southern Railway Company to the said Secretary of State, were by said Secretary of State placed on file in the office of the Auditor General of said State as required by law.

15. That the said Auditor-General kept in his office a book called a specific tax ledger, in which he kept an account with the Michigan Southern and Northern Indiana Railroad Company, and subsequently with the Lake Shore and Michigan Southern Railway Company, and upon the receipt of each of the reports so made by the said Michigan Southern

---

*Eighth.*    Dividends during the year, two of four per cent. each.
*Ninth.*    The receipts of the consolidated company (Buffalo to Chicago) for the year named, were as follows:

| | |
|---|---:|
| From freight | $12,381,675.63 |
| Passengers | 4,147,950.14 |
| Other sources | 804,646.48 |
| Total, | $17,334,272.25 |

*Tenth.*    The number of foreign passengers ... 396,338
"     "     " local     " ... 1,597,376

*Eleventh.*    Expenditures:

| | |
|---|---:|
| Repairs, roads including new iron, &c., | $4,058,994.10 |
| "     engines and cars | 1,723,411.83 |
| Other operating expenses | 6,927,419.57 |
| Construction | 7,944,362.29 |

*Twelfth.*    Number of engines ... 417
Number of passenger cars ... 124
"     " freight     " ... 8,835
"     " second class and emigrant cars ... 41
"     " baggage, mail and express " ... 80
*Thirteenth.*    Average number of men employed ... 11,000
*Fourteenth.*    Mileage, number of miles run by passenger trains 2,594,653
Number of miles run by freight trains ... 6,981,300
"     "     "     "     " other     " ... 3,603,197

*Fifteenth.*    Under the third section of the consolidation Act, they report that the portion of their capital and loans actually employed in the State of Michigan is $3,612,255.27, but under the decision of the Supreme Court of the State of Michigan in January, 1862, and of the Circuit Court of Wayne County in January, 1865, the company is held liable to the specific tax of ¾th of one per cent. upon $4,739,240.16.

All of which is respectfully submitted.

S. WITT,     } DIRECTORS
H. B. PAYNE,  } L. S. & M. S. Ry.

and Northern Indiana Railroad Company, and the said Lake Shore and Michigan Southern Railway Company, the said Auditor General estimated and charged upon the said specific tax ledger, the amount of the specific taxes due from said company for the year covered by such report, and that said Michigan Southern and Northern Indiana Railroad Company and afterwards the Lake Shore and Michigan Southern Railway Company, from year to year paid the taxes so estimated and charged against it.

16. That the stock hereinbefore mentioned as sold to the stockholders of the Lake Shore and Michigan Southern Railway Company, to the amount of forty per cent. of the holding of each of the said stockholders, was so sold for the purpose of obtaining money to be used for construction; and that the money so obtained was chiefly used for such purpose outside of the State of Michigan.

17. That from and including the year 1862 up to the commencement of this suit, but a comparatively small amount of money was expended in improvements on the line of the old Michigan Southern and Jackson Branch Roads, or on account of construction or for equipment for use upon said roads; and that said roads during all the period aforesaid, remained in substantially the same condition, save that steel rails were substituted for iron, the cost of which over and above the value of the iron taken up was charged to operating expenses and paid out of current earnings, and the number of miles of side track was considerably increased. That the amount expended for side tracks from the year 1872 to 1878 both inclusive, was about $77,000 ; that what amount, if any, was expended for such purpose prior to 1872, does not appear; whilst during the period from the consolidation in 1869 to the commencement of this suit, the gross amount expended on account of construction upon the defendant's entire line, exceeded $15,000,000, not including expenditures for equipment.

18. The defendant operates 1176.81 miles of railroad; its main line extending from Chicago in the State of Illinois, to Buffalo in the State of New York. That from Elkhart,

Indiana, to Toledo, Ohio, it has two lines; one through Michigan and one through Indiana and Ohio. 151.09 miles of its road are operated under lease, and 170.41 are held under the charter of the said Michigan Southern Company. That its road in Michigan is a single track, whilst between Toledo and Buffalo it is a double track, and greatly more expensive of construction and valuable per mile; that it has extensive and costly station grounds and buildings at Chicago, Toledo, Cleveland, Erie, Dunkirk and Buffalo, and shops at Elkhart. That for the year 1879, the proportion of traffic over the Michigan road was about three per cent. of the whole traffic; that the per cent. of traffic over the Michigan road varied from year to year, and that as compared with other States it has been constantly diminishing.

19. That the stock of defendant is now fifty millions of dollars, and its bonded debt about thirty-six millions and five hundred thousand dollars, and that the present market value of said stock and bonds is near ninety six millions of dollars.

The court instructed the jury as follows, to wit:

I. The plaintiffs are entitled to recover the tax of three-fourths of one per cent. for the years 1872, 1873, 1874, 1875, 1876 and 1877, upon the sum of $185,459.84, as part of a loan to the old company, notwithstanding the amount realized by said company on said loan was by reason of discounts allowed thereon, reduced that sum below the par value of the same.

II. Plaintiffs are entitled to recover interest on the last mentioned item from the day of the commencement of this suit.

III. Plaintiffs are entitled to recover the tax of three-fourths of one per cent. for the years 1872, 1873, 1874, 1875, 1876 and 1877, upon the sum of $250,000, being the amount of the Jackson Branch bonds (so called).

IV. Plaintiffs are entitled to recover interest on the last mentioned item from the day of the commencement of this suit.

V. Plaintiffs are entitled to recover the tax of three-fourths of one per cent. for the year 1872 on the increase of capital stock employed in the State of Michigan.

VI. The amount of such increase upon which the tax in the last request mentioned is to be assessed, is the sum of $738,216.

VII. The plaintiffs are entitled to recover the tax of three-fourths of one per cent. for the years 1873, 1874, 1875, 1876 and 1877, on the increase of capital stock employed in the State of Michigan.

VIII. The amount of such increase upon which the tax mentioned in the last request must be assessed, is the sum of $1,052,048.

IX. The plaintiffs are entitled to interest upon each year's item of taxes mentioned in the fifth, sixth and seventh requests, to charge from the first day of February of each year next after the year for which the tax became due and payable.

The defendant, by its counsel, excepted to the giving of each of said instructions.

The jury found for the plaintiff, assessing damages at $83,484.85. Defendant brings error.

*E. W. Meddaugh* and *Ashley Pond* for plaintiff in error. The courts will follow the long practical construction of a law established by the administrative departments of the State: *Clark v. Mowyer* 5 Mich. 462; *United States v. Gilmore* 8 Wal. 330; *Edwards Lessee* 12 Wheat. 206; an action for unpaid back taxes will not lie where the sum due has not been ascertained: Act 138 of 1855, § 3; and where a different remedy is provided: Cooley on Taxation 13, n. 1; act 57 of 1872 requiring the Auditor General to assess the amount of tax against a company refusing to report a basis for valuation, and providing for an appeal to the Ingham Circuit Court and a review by the Supreme Court, applies to the corporation defendant: see *Branin v. Conn., etc., R. R.* 31 Vt. 214; *Peters v. St. L. & Iron Mountain R. R.* 23 Mo. 107; *Bank of Pennsylvania v. Com.* 19 Penn. St. 144;

*Jefferson Bank v. Skelly* 1 Black 436; *Providence Bank v. Billings* 4 Pet. 514; 2 Redf. Railways 406-8, n.; the State cannot recover interest in an action for unpaid taxes which have never been assessed: Hilliard on Taxation 16, 444; *Danforth v. Williams* 9 Mass. 324; *Haskell v. Bartlett* 34 Cal. 281; *Himmelman v. Oliver* id. 246; *Camden v. Allen* 26 N. J. 398.

*Otto Kirchner* and *Chas. A. Kent* for defendant in error. An estoppel does not operate against the sovereignty: *People v. Brown* 67 Ill. 436; *Doe v. Maxwell* 10 Ired. 110; *Doe v. Roe* 4 Hawks. 116; especially from an act done ministerially by the officer whose course is relied on as a foundation for it: *United States v. Railroad Co.* 1 Fed. Rep. 700; *Bank v. United States* 19 Wall. 227; *King v. United States* 99 U. S. 229; *United States v. Tilden* 24 Int. Rev. Rec. 99; *Street Railway Co. v. Philadelphia* 51 Penn. St. 465; *Railroad Co. v. Slack* 26 Int. Rev. Rec. 60; interest can be recovered as damages for the non-payment of money: Sedgwick on Damages (6th ed.) 463.

MARSTON, C. J.   In many respects this case resembles the *Michigan Southern & Northern Indiana R. R. Co. v. Auditor General* 9 Mich. 448; and *People v. The Michigan Southern & Northern Indiana R. R. Co.* 4 Mich. 398.

Some preliminary questions have been raised, which it was claimed should dispose of the present controversy, without the necessity of passing upon what might be considered the merits, and these perhaps had better first be disposed of.

As to the proceedings in the Wayne circuit court in chancery commenced in 1862 and in which a decree was rendered restraining the Auditor General from collecting taxes claimed to be due the State from the company for the years 1858 and 1861 inclusive, on account of the discounts and Jackson branch bonds hereinafter referred to, I am of opinion such proceedings are not *res adjudicata* against the State in this case.   If in the present case the State sought to recover the taxes for 1858–9–60 and '61 which were then in controversy

and the collection of which was restrained by the decree rendered in that case, the company might well say the State was concluded, and the mere fact that the decision was acquiesced in by the State, from necessity, would be no answer. Such, however, is not the present case. This action was commenced in 1880 and the State was permitted to recover taxes for the years 1872 and subsequent thereto. The decree in the Wayne circuit would not prevent the State from claiming and seeking to recover taxes accruing subsequent to the years or taxes then passed upon. This is a new controversy, for a new cause of action, and in which some of the legal questions then passed upon are again raised, and the decision of the court thereon is of no importance except as a precedent. In this case it is not conclusive. Such was the view of Mr. Justice Campbell upon a similar question in the case in 9 Mich., already referred to, and as that case is reported there does not seem to have been any diversity of opinion on this point. The parties are bound in so far as regards the subject-matter then involved, but are at liberty to raise anew the same legal questions in a case arising subsequently, even although the facts may be substantially alike in other respects. The principle is that a party shall not be twice vexed for the same cause; but this is not the same cause but one arising since then, and the State is not in this case seeking to recover any portion of the taxes the collection of which was restrained in that case.

The Auditor General having assessed the company upon the reports made by it, for the several years covered by this action, and such assessments having been paid, it is claimed that in the absence of fraud by the company the action of the Auditor was final.

The Auditor General is required to ascertain and estimate, from the annual report made by the company, the amount of the tax chargeable against it, and for this purpose he may require the company to make farther and additional reports. It is not claimed that there was any fraud practiced by the company, and the Auditor General seems to have been satisfied with the annual reports as made, as

he did not call for anything farther. An examination of one of the reports made, all being alike, shows that the company gave therein the aggregate amount upon which it claimed the State could tax it, but whether correct or not, or whether the company was not liable to pay a tax upon the items in controversy in this case the Auditor General from the report could not determine. The company did not set up or present the facts in its report concerning these disputed items and leave it to the Auditor General to exercise his judgment and make an assessment therefrom. Had the company done so and the Auditor made his assessment therefrom, or had he called for a further report, or in any way passed upon the facts and made an assessment accordingly, the question presented would have been very different. In this case the Auditor General seems to have accepted the conclusion of the company as to the amount upon which it was liable to pay taxes, and having done so the amount of the tax was a matter of computation, a merely ministerial act. The only discretion or judgment he exercised, if any, was to not call for a farther report, but this was not a discretion or judgment passed upon any facts, but if anything, simply that he would not ask for or look into the facts at all. The law declared that the company should pay a certain tax upon its capital and loans actually employed in this State. From this the Auditor General had no power to exempt or relieve the corporation, and if in making and filing its report the corporation did not set forth the correct amount, the neglect or failure of the Auditor General to perform his duty would not operate as a payment or discharge to the company. The State ought not to be concluded by the mere non-action of one of its officers. It is sufficient for the protection of all, to hold the State bound, where an officer ascertains the facts and passes judgment thereon. The company made out its report upon a mistaken basis, and if it thereby misled the Auditor the State should not be the loser.

A question was suggested whether, admitting the position taken by the State to be correct, any suit would lie until the

Auditor General of his own motion or by *mandamus* had charged the tax sought to be recovered. As I understood counsel for the railroad company, they did not wish to press this objection, if upon such assessment hereafter being made, a recovery could be had. The company desired, and the public interests demand, that the entire matter in dispute should be passed upon on the merits. In such cases courts do frequently pass upon the merits, where the objection does not go to the jurisdiction of the court. See *Youngblood v. Sexton* 32 Mich. 406.

It seems to me, in any view that can be taken of this case, we must hold that the opinions in the cases referred to in 4 and 9 Mich. settle beyond all controversy the liability of the company to pay taxes on the stock items of $267,470 and $584,578. We must in my opinion directly overrule both those cases before we can arrive at a different conclusion, and this we are not prepared to do. Upon this part of the case it is not necessary to repeat what was there said.

As to the item of $250,000 bonds issued and loaned to one Dwight. It appears that those bonds were issued to obtain money for constructing the road of the company, but before using them they were loaned to Dwight, he agreeing to return the same bonds at a time agreed upon, and giving as collateral thereto certain bonds of another railroad company.

Dwight failed to return the bonds as agreed, and the bonds received as collateral proved of no value. It is therefore evident that no sale or exchange of the company's bonds was made or contemplated, but an unauthorized loan not sanctioned by the charter of the company or any one acting under authority for it. Had these bonds been exchanged for material to be used in the construction of the road, I can well see that the company should be obliged to pay a tax thereon, even although the material had been lost or destroyed before it was actually used by the company. Here there was neither sale nor exchange, but a loan, and the specific bonds loaned were to be returned, and it was only upon the failure to make such return that the company

endeavored to realize from the collaterals which it held. Even if the company had power to ratify the loan, this could not be considered simply as a ratification, but as an effort to protect itself from the injurious effects of an illegal transaction. The company was held liable to taxation upon this item in the case in 4 Mich., upon the facts as there presented, upon the presumption that the bonds received were the equivalent of those issued, but as was said in 9 Mich., no such presumption can here be indulged in, it affirmatively appearing that the bonds received were of no value.

The next item is that of $184,549.34, representing the aggregate amount of discounts allowed or paid by the company in making loans. This was expressly passed upon in 4 Mich., and it was there held the company was liable to taxation thereon. In my opinion the conclusion there arrived at should be adhered to. I think the popular understanding is that the amount of a loan is that represented by the face of the obligation and not the amount received, and this I think must have been the intent of the Legislature. This view avoids all danger and difficulties that might otherwise be raised in the sale and negotiation of bonds, growing out of the commissions paid, or because of the fixed rate of interest or otherwise the bonds sold above or below par.

The court below permitted the State to recover interest, and this I think was erroneous. Whether the reports made by the company were correct or not, until an assessment or charge was made by the Auditor General and notice thereof given the company, it was not in fault for not paying. Some act by the Auditor General was necessary before the tax became due and payable. Interest is allowed where money is withheld, either upon the ground of a promise express or implied to pay interest or as damages for default in retaining money due and owing another. But upon whatever ground it may be placed, in the absence of an express promise, until the principal becomes due, no promise to pay interest can be implied, or be awarded as damages.

CAMPBELL, J. I feel reluctant to take any steps in this cause, because the action of the Auditor General cannot be

anticipated, or any step taken to enforce a tax that he has not levied. But as the questions do not differ materially from those which have arisen before, I am not disposed to withhold my views.

Upon all of the questions which have been up previously, I adhere to the views which I expressed in the case decided in 9 Mich. I think that a loan *made to* the company cannot include money not loaned to them; and that if they borrow a sum for which they give obligations beyond the amount received, there is no loan made to them for the excess. The statute is designed, as I think, by its terms, to tax their actual receipts in money or its equivalent in property, or some other value, and not to tax their liabilities.

I agree that the stock dividends and issues of stock proportioned to that previously held by shareholders must stand on the same footing with original stock, and should be taxed as far as it is considered paid in. The arrangements allowing consolidation very clearly, in my opinion, were intended by the law to leave the Michigan company, which is the only one over which this State has any actual power of enforcing its laws directly, in its original position as to stock and loans, and to annex to its capital and loans those additions which are made proportional to the original amounts. The Michigan investment can never be less than what it was in the first place, and if gains are made which take the form of paid-up stock, each dollar of stock thus divided must be treated as having earned its share. There is no other possible way to discriminate between the Michigan and foreign investments, for neither stock nor loans are very often expended specifically in one place more than in another.

I am, therefore, of opinion that the items for bonds for which no equivalent was received, and the discount on bonds sold at less than par should not be taxed, but that the stock dividends to the amount reckoned as paid in should be taxed. No interest can be charged, because the tax has never been levied, and is not in default.

GRAVES, J. concurred.

COOLEY, J. having been of counsel for the people in a former litigation between the parties as to a similar subject-matter, did not sit in the case.