## Case No. 17,011.

### VOSE v. REED et al.

[1 Woods, 647.] [1]

Circuit Court, N. D. Florida.    May, 1871.

EQUITY—PARTIES—CITIZENSHIP OF CORPORATION—PLEA TO JURISDICTION—RECEIVERS—CONTEMPT PROCEEDINGS.

1. In a suit brought in the circuit court of the United States. by reason of the citizenship of the parties, a corporation of the state. of which the complainant is a citizen, cannot be made a defendant.

2. If the same corporators. composing such corporation. become incorporated in the state where the suit is brought. the corporation thus formed may be made a defendant.

[Cited in Chicago & N. W. Ry. Co. v. Auditor General, 53 Mich. 91. 18 N. W. 586.]

3. A plea to the jurisdiction of the court must be pleaded by itself. and cannot be set up in the answer under rule 39, as an answer is an appearance and a waiver of a plea to the jurisdiction.

[Cited in Bland v. Fleeman, 29 Fed. 672.]

4. When it properly appears by the record that there is a party over whom the court has no jurisdiction. and who is not a necessary party to the proceedings, the bill will be dismissed as to that party, and retained as to the others.

5. The appointment of a receiver to take and preserve a trust fund is the exercise of a discretion in which all the circumstances are to be taken into consideration. Where the funds are in the hands of trustees. appointed by the legislature. who hold their trust ex officio, as high public officers of the state, and especially where one part of the trust involves duties of a public character. the court will be very reluctant to take the fund out of their hands, and will not do so except for the most cogent reasons, such as gross fraud and imminent danger of the trust fund. It will resort to every coercive means of compelling the trustees to perform their duty before resorting to this extreme measure.

[Cited in McGeorge v. Big Stone Gap Imp. Co., 57 Fed. 270; Wilder v. New Orleans, 67 Fed. 569.]

6. There is no doubt of the power of the court. as a court of equity, to award attachments for contempt in vacation. As an equitable tribunal, the court is always open.

7. Where parties have been guilty of a technical contempt. in violating an injunction, but declare on oath. that they were not aware of the violation. and submit to the direction of the court, they will be allowed to purge the contempt by undoing or reversing their acts, when it is practicable to do so.

[Cited in Mason v. Harper's Ferry Bridge Co., 16 W. Va. 888.]

At chambers. Application for an attachment, as for a contempt, and for the appointment of a receiver, on amended bill and answers of the several defendants and affidavits.

H. R. Jackson, H. Bisbee, Jr., and J. D. Pope, for complainant.

---

1 [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

Peeler, Papy, L'Engle & Drew, for defendants.

BRADLEY, Circuit Justice. The legislature of Florida, by an act passed January 6, 1855, vested certain public lands, including all swamp and overflowed lands, belonging to the state, in the governor, comptroller, treasurer, attorney general and register, as trustees, to constitute an internal improvement fund, and to serve, amongst other things, as a guaranty of bonds to be issued by certain designated railroad companies for the procurement of iron rails and rolling stock. A certificate of guaranty was to be placed on the bonds of the trustees. In case the interest on these bonds and one per cent. per annum for a sinking fund were not paid by any of the companies, the trustees were authorized to take possession of and sell the road, appurtenances and franchises of the company in default, and to apply the proceeds in purchasing up the bonds or incorporating them with the sinking fund.

The powers given to the trustees were large and various. They were authorized to fix the prices of the lands, to make arrangements for draining them, and to promote their settlement and cultivation by allowing preëmptions and other modes of encouragement. The Florida Railroad Company was one of the companies included in the benefits of this act, and issued a large number of bonds which were duly indorsed by the trustees. No installments of interest or sinking fund were paid during the war. In November, 1866, the trustees seized and sold the road, and with the proceeds of sale purchased and cancelled a large proportion of the outstanding guarantied bonds of the company. The complainant held a number of the bonds which were not thus purchased. He filed his bill for relief against the trustees, whom he charged with mismanaging the funds, and against other parties and corporations whom he charged with complicity in such mismanagement by obtaining fraudulent purchasers of the lands at nominal prices. He also prayed for an injunction and the appointment of a receiver of the trust fund. An injunction having been granted in December, 1870, which, as the complainant states, was disregarded, he obtained an order to show cause why an attachment for contempt should not issue, and a receiver be appointed as prayed in the bill.

The case now came up on this order to show cause, and upon answers put in by the defendants denying fraud, and explaining the transactions complained of. But—

I. There was a question as to parties. One of the defendants in the original bill, alleged to have obtained a large fraudulent grant, was called "The New York and Florida Lumber and Land Improvement Company, a corporation created under the laws of New York, but designed to be located and to do business in the state of Florida, and actually located and doing business there." By an amended bill it was alleged that this corporation also exists as a corporation under the laws of Florida, under the name of "The Florida Improvement Company," the same persons who composed the former having associated themselves together and become incorporated under the acts of the assembly of the latter state. The first named corporation being, in law, a citizen of New York, could not be sued in the circuit court of the United States by the complainant, who is a citizen of that state; and the bill was dismissed as to it. The last named corporation the court held to be, in law, a citizen of Florida, being a corporation created by the laws of that state, though originally composed of the same individuals as the former. The company having filed an answer and, among other things, having therein pleaded the above matter to the jurisdiction of the court, it was held that this could not be done. The court (Bradley, Circuit Justice) said: This plea to the jurisdiction cannot be received in this way. A plea to the jurisdiction must be a separate plea. An answer is an appearance, and waives it. The company has applied to withdraw its answer and plead anew. This cannot be allowed. As the aim of the court is to do justice between all the essential and proper parties, it will not encourage pleas to the jurisdiction, the object of which is to postpone a judicial consideration of the controversy. When it properly appears by the record that there is a party over whom the court has no jurisdiction, and who is not an essential party to the proceedings, the bill will be dismissed as to that party, and retained as to the others. Accordingly the bill was dismissed as to one company and retained as to the other.

II. The next question is, whether the court will appoint a receiver? This is a matter always in the discretion of the court; but as a general rule a receiver will be appointed for the purpose of protecting the fund when the complainant has an equitable interest in the subject, and the defendant having possession of the property is wasting it, or removing it out of the jurisdiction of the court. But all the circumstances of the case are to be taken into consideration, and if the case be such that a greater injury would ensue from the appointment of a receiver than from leaving the property in the hands now holding it, or if any other considerations of propriety or conveniency render the appointment of a receiver improper or inexpedient, none will be appointed. In this case the trustees having possession of the trust fund and property are public officers of the state and trustees ex officio. And it cannot with propriety be said that their appointment is a mere designatio personarum. The governor of the state, the treasurer, the comptroller, and other state executive officers are named trustees for a purpose. The state has a great interest in the trust. It is not merely to preserve the fund as a security for the payment of railroad bonds that the trust is created, but to provide for the drainage and reclamation of the lands, and their settlement and cultivation. These are political objects

of the most important character. To attain these objects they are authorized to grant preëmption rights for not more than a section of land to each settler. Increase of population and development of resources are primary elements in the prosperity of a state; and these, as well as railroad improvements, are made objects of the trust. Drainage, reclamation, development, immigration, are all of them objects of first national and state importance; and none of them will be likely, in the end, to depreciate the value of the pecuniary security afforded by the lands, whether for the payment of railroad bonds or anything else of like character.

Now these public and political objects of the trust make it extremely fitting that the chief executive officers of the state should administer the fund. And it must be a very strong case, indeed, which will induce the court to take the property out of their hands and put it into the hands of its own officers. The legislature has seen fit to intrust the chief officers of the state with these important duties, and it would show a great disrespect to this co-ordinate branch of the government for the judiciary, on light grounds, to displace these officers from the trust, and to put appointees of its own in their stead. If they are guilty of breach of duty, they can be enjoined; they can be made personally responsible; the fund can be followed in the hands of persons getting hold of it in a fraudulent manner. It would be very strange if the courts could not in some way secure the rights of parties having an interest in the fund, without removing from the trust those official personages to whose administration it has been intrusted by the legislature. The court will not shut its eyes to the fact that these officers are constantly being changed by the suffrages of the people of the state and the constituted power of appointment; and it would be very inconvenient and awkward for the court, by the appointment of a receiver, to withhold the property from the possession and management of new state officers, fresh from the confidence of the people, and against whom no charges of incapacity or want of integrity have been made. To my mind, it seems to be a case in which, if a receiver can be appointed at all, the appointment ought not to be made until every other remedy has been tried in vain. Besides, looking at the peculiar and important duties attaching to the trust, how could a receiver, how could a court, without the greatest embarrassment, administer the trust? How could the court take cognizance of the requirements of a vast political territory in reference to drainage, development, pre-emption and population? It would be a Herculean task for a court, or the receiver of a court to perform. I do not feel that I ought to take the trust fund out of the hands of the state officers, in this case, and place it in the hands of a receiver. The motion for a receiver is therefore denied.

III. The next question is, whether the defendants have been guilty of a contempt by violating the injunction granted by Circuit Judge Woods. A preliminary question is raised by the defendant, who contends that the court has no power to inquire into a contempt for disobedience to an injunction except at a regular term of the court. Whatever may have been the power of the court prior to the act of August 23, 1842 (5 Stat. 516), I have no doubt that since that statute the motion for an attachment on the equity side of the court may be made at any time. By that statute it is declared that the circuit courts as courts of equity shall be deemed always open for the purpose of filing libels, bills, petitions, answers, pleas and other pleadings, for issuing and returning mesne and final process and commissions, and for making and directing all interlocutory motions, orders, rules and other proceedings whatever, preparatory to the hearing of all causes pending therein upon their merits. An attachment is frequently necessary to expedite a cause, as for example, on the return of a subpœna, which the person subpœnaed refuses to obey. The 7th rule in equity declares that the process of subpœna shall constitute the proper mesne process in all suits in equity in the first instance, to require the defendant to appear and answer the exigency of the bill; and unless otherwise provided in the rules, or specially ordered by the circuit court, a writ of attachment, and if the defendant cannot be found, a writ of sequestration, or a writ of assistance to enforce a delivery of possession as the case may require, shall be the proper process to issue for the purpose of compelling obedience to any interlocutory or final order or decree of the court. If an attachment could not be issued, for example, to compel the attendance of a refractory witness, except in open court, the business of the court would be liable to be sadly impeded in cases of importance and great public feeling. I have no doubt that an attachment may be applied for in equity at any time, when there is occasion for the use of a writ.

We come then to the question, whether the defendants have violated the injunction, and so rendered themselves amenable to an attachment. The complainants by the petition allege that they have done so in several particulars which will be separately examined.

The sale of 300,000 acres of land, to E. H. Studwell, is alleged to be a direct violation of the injunction; I do not see how it can be seriously contended that it is not. If not a direct violation, it is at least a palpable attempt at an evasion, and must be treated as such. But as the defendants have, in their answer, stated that they acted in good faith, not supposing that they were violating the injunction, and that they desire to act in obedience to the views of the court, it will be proper to allow them an opportunity to retrieve the error which they have committed. I shall therefore order that an attachment do issue against them, unless on the first day of the next term of the court, a cancellation of the deed of Studwell be produced.

(A similar order was made with regard to the 100,000 acres conveyed to the Florida Im-

provement Company. But as to the remaining charges of violation of the injunction, the court, after an examination of the answers and affidavits, considered that they were not substantiated. The motion to dissolve the injunction was denied.)

As to the general powers of the trustees, and the degree of control which the court will exercise over them, the presiding justice remarked, in substance, as follows:

The discretion with which the law has invested the trustees on the management of the fund is very large, and so long as they act in good faith and not palpably in violation of their trust. the exercise of that discretion cannot be interfered with. It is their discretion, and not that of the court to which the state has intrusted the management of this important fund. consisting as it does, of the whole public domain of the state.

But if the trustees are not acting in good faith; if they are acting fraudulently, and in collusion with the donees and grantees of the various large grants which they have made, they will not only be personally liable to answer to the complainant and other bondholders similarly situated, for the payment of their bonds; but the fraudulent sales will be set aside, and the property sold will be followed by the court, and put up for sale at public auction; and any proceeds of sales which ought to be in the hands of the trustees, but which from their default or fraud. are not forthcoming, will also be followed in their hands. or in the hands of those who have them. and applied to the purposes of the trust. But the settlement of these questions is proper for the final hearing of the cause, after all the issues have been made. and after all the evidence is in.

[For a motion for an attachment for contempt for disobedience of the decree of the court, also for a petition for rehearing, see Case No. 17,-008.]