# THE CHICAGO & NORTHWESTERN RAILWAY COMPANY v. THE AUDITOR GENERAL.

*Estoppel—Taxation of railway operating in other States.*

1. One is estopped from denying the truth of his own statements if his denial would mislead and prejudice another who has acted in reliance thereon; but the State, in collecting its revenue, cannot apply the rule of estoppel to citizens who have not fully reported the necessary data for assessing them, unless the citizens are acting in fraud and evasion of the law. The State seeks only to take a just proportion from every citizen, and not to take advantage of the mistakes of tax-payers to make them pay more.

2. The General Railroad Law of Michigan made roads that lay partly within and partly without the State, taxable on so much of their gross receipts as corresponded to the ratio of their local to their entire length. A local company was consolidated with a foreign one that controlled a number of other consolidated roads and several leased lines besides, but the corporation reported its receipts in gross, without discriminating between its own roads and those that were leased, and was assessed accordingly, as if it constituted a single line. *Held* (1) that it was not estopped by its report from disputing the legality of the assessment; the proper course was for the Commissioner of Railroads to require more definite information from it as a basis of assessment; (2) the foreign corporation was not taxable upon its entire system, but only upon the Michigan road which had been consolidated therewith.

3. Before the Michigan Tax Law of 1882 was adopted, railroad companies that had been organized under the State laws and whose roads lay wholly within or partly without the State, were taxable upon a basis fixed for Michigan roads by the General Railroad Law of 1873. And roads were permitted to consolidate with one another. *Held,* however, that if the company with which consolidation had been effected was a foreign one the consolidated company could not be taxed as if its roads constituted a single line that ran partly without the State but derived its powers from the State law.

4. Judicial action cannot be based on a postulate that in itself is a contradiction of terms.

5. A corporation cannot be created by the joint act of several states unless by compact or treaty.

6. Every railroad corporation has its existence and domicil within the territory of the sovereignty which creates it; and when two or more

corporations created in different sovereignties are consolidated into one, the component parts bring to the new organization the powers and privileges possessed by each, however different, and the consolidated company exercises in each jurisdiction only those powers that the constituent part formerly exercised there. And where roads lying in different states are consolidated, the Legislature of each State continues to legislate as before in respect to so much of the road as has always been within its jurisdiction, and cannot follow the consolidated company outside of the State. But the consolidated company stands, in each state, in the place of the corporation to whose rights it succeeded there.

Appeal from Ingham. (Gridley, J.) Jan. 30–31. March 6.

BILL for injunction. Complainant appeals. Reversed.

*Burton C. Cook, Charles Upson* and *William F. Vilas* for appellant. A railroad corporation created by the laws of different states and consolidated under the laws of each then constitutes a distinct corporation in each state: *Railroad Co. v. Koontz* 104 U. S. 5; *Chic. & N. W. Ry. v. Chic. & Pacific R. R.* 6 Biss. 219; *State Treasurer v. Auditor General* 46 Mich. 224; a corporation existing in one state can derive no power there from a grant in another: *Ohio & Miss. R. R. Co. v. Wheeler* 1 Black 286; *Bank of Augusta v. Earle* 13 Pet. 512; a corporation is such only in the State which enacted the law creating it: *Quincy R. R. Bridge Co. v. Adams County* 88 Ill. 615; and it has its habitat there: *L. C. & C. R. R. v. Letson* 2 How. 497; *Drawbridge Co. v. Shepherd* 20 How. 232; unequal taxation is against the Fourteenth Amendment to the Federal Constitution; *San Mateo County v. Southern Pacific R. R.* 7 Sawy. 517; *Woodbridge v. Detroit* 8 Mich. 301; a road "lying partly within and partly without the State" within the meaning of the railroad law of 1873 is one that is organized under that law: see *U. K. T. R. Co. v. T. & St. L. Ry.* 10 Fed. Rep. 497; *Callahan v. L. & N. Ry.* 11 Fed. Rep. 536; consolidation will not change the basis of taxation: *Phil. & Wil. R. R. v. Maryland* 10 How. 376; equity will restrain the collection of an unauthorized tax: *Kinyon v. Duchene* 21 Mich. 498; *Merrill v. Auditor General* 24 Mich. 170; *Ramsey v. Hoeger* 76 Ill. 432; *Porter v. R. R. I. & St. L. R. R. Co.* 76 Ill. 561; *C. & N. W. Ry. Co. v. Miller* 72 Ill. 144; *Marsh v. Supervisors* 42 Wis. 502; *Hersey v. Supervisors* 37 Wis. 75; *Salscheider v. Fort Howard* 45 Wis. 519; *Schettler v. Ft. Howard* 43 Wis. 48; *Goff v. Supervisors* 43 Wis. 55.

*Alfred Russell* for the Wabash, St. Louis & Pacific Railway Company, a corporation situated like complainant in respect to taxation.

Attorney General *Jacob J. Van Riper, William B. Williams,* ex-Railroad Commissioner, and *Edward Bacon* for appellee.    The constituents of a consolidated corporation cease to exist when the latter is created : *Shields v. Ohio* 95 U. S. 319 ; *Railroad Company v. Georgia* 98 U. S. 359 ; *Railroad Company v. Maine* 96 U. S 499 ; *Clearwater v. Meredith* 1 Wal. 40 ; *McMahon v. Morrison* 16 Ind. 172 ; *Lauman v. Lebanon* 30 Penn. St. 42 ; *State v. Maine Central R. R.* 66 Me. 488 ; *State v. Sherman* 22 Ohio St. 411 ; *Morgan v. Louisiana* 93 U. S. 219 ; *Mansf., Coldw. & L. Mich. R. R. v. Drinker* 30 Mich. 124 ; *Marq., Hought. & Ont. R. R. v. Langton* 32 Mich. 252 ; *Swartwout v. Mich. Air Line Ry. Co.* 24 Mich. 404 ; misunderstanding of the terms of a tax law and acceptance by public officers of too small an amount will not bar the State from enforcing its just demands : *Bank v. Commonwealth* 10 Penn. St. 451 ; *Del. Div. Canal Co. v. Com.* 50 Penn. St. 399 ; *Dollar Savings Bank v. United States* 19 Wal. 227.

COOLEY, C. J.    The purpose of this suit is to determine the basis for the taxation of the complainant in this State for the year 1880.    It has been argued in this Court as a question of statutory construction merely, and as such we shall consider it.    The following are the material facts which raise the question.

Previous to October 21, 1864, the Peninsula Railroad Company was operating a line of railroad in the Upper Peninsula of the State of Michigan, having been organized for that purpose under the general act for the incorporation of railroads, approved February 12, 1855.    Sess. L. 1855, p. 153; Comp. L. 1857, p. 631.    The fiftieth section of that Act provided that "any railroad company in this State, forming a continuous or connected line with any other railroad company, may consolidate with such other company either in or out of this State, into a single corporation : *provided,* that no such companies having parallel lines, or lines diverging and converging, but being conterminous, shall be permitted to consolidate themselves into one corporation."    And this

and subsequent sections proceed to specify the manner in which the consolidation may be accomplished, and the effect it shall have upon property, obligations, contracts, etc.

Previous to the day first named, the Chicago & Northwestern Railway Company was operating lines of railroad in the states of Illinois and Wisconsin, and on that day it entered into articles of consolidation with the Peninsula Railroad Company, whereby the two were to be merged into one, under the name then held by the Illinois and Wisconsin corporation, and these articles were duly executed and made a matter of record, as was required by the Act above mentioned.

After such consolidation, the Chicago & Northwestern Railway Company from time to time consolidated with other companies owning and operating roads in different States, until at the end of the year 1880, the total mileage of the company was 1037.73, of which 406.40 was in Illinois, 458.88 in Wisconsin, and 172.45 in Michigan. The company was also operating the roads of other corporations which had been leased to it in perpetuity, the total mileage of which was 487.51, all in the State of Iowa. It was also operating with its own the roads of other companies, having a mileage of 195.70, of which 83.50 was in Illinois, 8.50 in Iowa, 66.04 in Wisconsin and 37.66 in Michigan. These last-mentioned roads maintained their corporate existence, but all accounts were made a part of the general accounts of the Chicago & Northwestern Railway Company, without discrimination.

The principal corporation also operated, during the year 1880, 1049 miles of the road of corporations of which it was owner of the capital stock, and which are spoken of in the record and arguments as proprietary roads. Of this mileage 10.25 was in Illinois, 155.45 in Iowa, 222.28 in Wisconsin, 473.99 in Minnesota, and 277.61 in Dakota. The grand total was 2770.52 miles, of which 500.15 was in Illinois, 651.46 in Iowa, 747.20 in Wisconsin, 413.99 in Minnesota, 210.11 in Michigan, and 247.61 in Dakota.

In 1873 the General Railroad Law of the State and other Acts on the same subject were repealed, and a new law en-

acted in the stead thereof, with a declaration therein that "the organization of all corporations, under the provisions of either of said acts, shall be deemed and taken to be organizations under this Act, and all rights, obligations, and liabilities contracted or incurred by any of such corporations thereunder, or under the provisions of any law now in force, not inconsistent with the provisions of this Act, shall continue of the same force and effect as though such acts or law had not been repealed; and all such companies, from and after the taking effect of this Act, shall be subject to all the provisions hereof as fully as though such organization had been perfected hereunder." 1 Sess. L. 1873, pp. 496, 543. The revised law required that every railroad company should report annually to the Auditor General all its operations, the business done, and the receipts and expenses; and imposed a penalty of $1000 for any failure to make a report, or for a false report. It further provided as follows:

"Every company formed under the provisions of this Act shall, on or before the first day of July in each year, pay to the State Treasurer, on the statement of the Auditor General, an annual tax upon the gross receipts of said company, computed in the following manner, viz.: Upon all gross receipts not exceeding four thousand dollars in amount per mile of road actually and regularly operated for the conveyance of passengers and freight, two per cent. of such gross earnings; upon such gross receipts in excess of four thousand dollars per mile so operated, three per cent. thereof; which amount or tax shall be in lieu of all other taxes upon the property of such companies, except such real estate as is owned and can be conveyed by such corporation under the laws of this State and not actually occupied in the exercise of its franchises, and not necessary or in use in the proper operation of its road; but such real estate so excepted shall be liable to taxation in the same manner, for the same purposes, and to the same extent, and subject to the same conditions and limitations as to assessment for taxation, to taxation, and to the collection and return of taxes thereon as is other real estate in the several townships within which the same may be situated. And when a railroad lies partly within and partly without this State, there shall be paid such portion of the tax herein imposed as the length of the

operated road lying within this State bears to the whole length of the operated portion thereof." 1 Sess. L. 1873, pp. 530–532.

The lines of road operated by the complainant within the State of Michigan were all built by independent companies as independent roads; and the construction which was put by the officers of complainant upon the provisions of the Act of 1873 respecting taxation, was that the company should report to the Auditor General the gross receipts from the Michigan roads, and be taxed thereon. They accordingly, while reporting the operations of the company in full, specified separately the gross receipts upon the Michigan roads. The State authorities acquiesced in this construction, and received from the complainant the tax upon the Michigan gross receipts up to and including the year 1878, without, so far as appears, any objection being made. In 1879, however, the State assessed a tax against the complainant, upon its annual report, on a basis which assumed that all the roads which were operated by the complainant in its own name, and the accounts of which were kept together—which would include all the roads operated by it except the proprietary roads—were to be considered for the purposes of taxation as one road, lying partly within and partly without the State, and that the Michigan taxation should be in respect of a proportion of the gross receipts measured by the proportion which the mileage in Michigan bore to the whole mileage. The officers of the company paid this tax, without noticing that the basis of taxation had been changed, and in the following year made their report as they had done before, embracing in it the operations of all the roads except the proprietary roads; and computing the tax, at the rate specified in the statute, upon the gross receipts upon the Michigan roads, paid to the State treasurer the sum of $54,270.67, which would be the amount of the tax, computed on that basis. The State authorities, however, again made a computation on the basis adopted in 1879, the sum of which was $57,730.24, and they demanded of complainant the difference between these two sums, and proposed to issue process

for its collection under the provisions of Pub. Acts 1879, p. 41. It was to enjoin this collection that the bill in this case was filed.

The contention on the part of the State is that after a company formed in this State under the general law has been consolidated with a company formed in another state, or in two or more other states, it is thereafter to be deemed and considered a company "formed under" the general law, and its road a railroad which "lies partly within and partly without this State," within the meaning of the General Railroad Law, and that, therefore, the consolidated company must pay in this State a tax determined by the proportion of the operated road within the State to the whole length of the operated portion thereof. And it is in reliance upon this construction of the law, and this understanding of the light in which the road is to be regarded, that this tax is said to have been assessed.

One obvious difficulty with this view, when applied to this case, is that the tax has not been assessed in accordance with it. The gross receipts upon which the tax has been assessed are not the gross receipts of the consolidated roads now constituting the roads of the Chicago & Northwestern Railway Company in the states of Illinois, Wisconsin and Michigan, but they are the gross receipts of the consolidated roads swelled by the addition of those of 683.21 miles of other roads with the companies owning which there has never been any consolidation, and the major part of which is not within the limits of the three states in which the consolidated company has its existence. If, then, the defense is right in its construction of the statute, it is still plain that the tax is not justified by that construction, because it has not been followed in the computation which has been made.

The answer made on behalf of the State to this objection is that the complainant in keeping its accounts and making its reports has not discriminated between the gross receipts from the business done on the consolidated roads and that done on the other roads which it has operated, and for that

reason it was proper for the State authorities to treat all the roads as one, and to hold the complainant estopped from disputing the propriety and legality of an assessment based upon the report so made. This answer has plausibility, but we do not conceive it to be conclusive or sound.

It sometimes becomes an act of simple justice in the law to hold a party to the truth of something he has asserted, and not to suffer him to aver or prove the contrary, because to do so would be to mislead and prejudice some other party who has acted in reliance upon the truth of his assertion. The rule under which this is done is a simple rule of justice : *Maxwell v. Bay City Bridge Co.* 41 Mich. 453 ; *De Mill v. Moffat* 49 Mich. 125 ; and the cases must be rare in which it can be applied in behalf of the State against its citizens, when it is seeking to collect its revenues, unless the citizen is attempting some fraud upon the law, or some evasion of its provisions. What the State aims at in its revenue laws is to take from each of the persons liable the just proportion which he ought to contribute to the public burdens; and it is neither justice nor sound public policy to seize upon advantages—if any should offer—to make any one pay more than the just share which a proper construction of statutes framed to insure equality would require of him. If a mistake has been made which would give the opportunity for such advantages, the State is interested rather in correcting it than in working out results not intended by the law through the means of it.

We do not understand that any fraud is charged upon complainant in keeping its accounts and making its reports as it did. The fact that for several years the State authorities acquiesced in the construction put by the railroad officers upon the statute is very strong evidence that the construction itself, whether correct or not, was not forced or altogether without reason. And if under such circumstances the construction was held to be erroneous, the law, instead of applying a rule of estoppel, the only justification for which would be some attempted wrong on the part of the complainant which required the estoppel to circumvent it,

could in common justice do nothing else but adopt some method, if any was available, whereby the tax might be laid according to the true intent of the statute.  This might involve an inquiry into the facts; but the court, in a proper case, would have ample power for that purpose.

But there can be nothing in the nature of an estoppel in this case, for the further reason that there has been no misleading in respect to the facts.  It appears upon the face of the report upon which the tax has been assessed, that the gross receipts reported are for other roads in addition to the consolidated Chicago & Northwestern Railway Company roads.  What the State can complain of, if anything, in the report, is not that it misleads by untrue or deceptive statements, but that it fails to give all the information required to enable the tax to be laid according to the construction put upon the statute by the State officers.  If this is all the fault with the report, it is a case not for an estoppel but for a call for further information.

This view would not dispose of the case; it would only render necessary further inquiries if the construction now put by the State authorities on the Act of 1873 is determined to be the correct one.  It becomes necessary, therefore, as the next step in our examination, to pass upon that construction.

The complainant, as has been stated, has been consolidated with one railroad company organized under the laws of Michigan, and it also operates the road of another company organized under its laws with which it has not been consolidated.  The Act of 1873 provides that every company formed under its provisions shall be assessed for taxation on the basis therein prescribed, and it further provides that the pre-existing companies formed under general laws, shall be deemed and taken to be organizations under that Act.  The Michigan companies are therefore beyond dispute taxable under the Act of 1873, and the only question that can arise concerns the one that has become consolidated with the complainant.  That question is whether the complainant since

the consolidation is to be considered a "company formed under the provisions" of the statute of Michigan, whose "road lies partly within and partly without the State," so as to be taxed in respect to the gross earnings of the whole consolidated company in the proportion which the mileage in Michigan bears to the whole mileage.

It is said with truth that the consolidation of the Michigan corporation with a corporation existing in other states was only accomplished by the consent of this State and by following the steps prescribed by its statutes, and that it could not have been accomplished in any other manner. This being so, it is further said that the consolidated company is in the strictest sense a company formed under the provisions of the Michigan statute. And it is added that when the statutes make provision for the consolidation of Michigan corporations with corporations formed in other states, they must be supposed to have the consolidated companies in contemplation when they provide a basis for the taxation of railroads lying partly within and partly without the State.

This last consideration might be very conclusive if it were impossible for a railroad company to have a road partly within and partly without the State otherwise than by a consolidation of corporate organization. But it is matter of common notoriety that railroad corporations, as well as corporations for other purposes, are often allowed to exercise their corporate functions in other states than those from which they derive their powers, by the assent of such states, either expressly given by statute or implied from acquiescence. This fact was brought under judicial notice in *Railroad Company v. Harris* 12 Wall. 65 ; *Erie Railway Co. v. Pennsylvania* 21 Wall. 492, and in many other cases, and any general railroad law that failed to make provision for such a possible road could scarcely be said to be complete and adequate to all probable contingencies and needs. It is not therefore by any means necessary to suppose that the Legislature must have had consolidated roads in mind when providing for the taxation of companies whose roads were not entirely within the State. But the contrary view is strengthened by the fact

that in this State there have probably always been one or more roads, besides those consolidated under the general laws, lying partly within the State and partly out of it.   The very first road constructed in the State, and which had for its termini Toledo and Adrian, was of this description; and it would have been strange indeed, with that road and others similarly circumstanced in mind, if the Legislature had not contemplated the possibility of companies being organized under the provisions of the general law which would be permitted to extend their lines into other states, and to exercise corporate powers in such states, without any new grant of franchises except such as were necessarily included in such permission.

If, however, we are satisfied that the Legislature had such roads in mind, it must be admitted that it does not prove they did not have consolidated roads in mind also; it only shows that the words of the statute are not idle and inoperative whether they are or are not applied to the consolidated roads. It is necessary, therefore, to look further before the question now in issue can be conclusively determined.

One difficulty with the position taken by the State is that since the consolidation with the Michigan corporation, and which was the only consolidation which was ever assented to by this State, other consolidations have been going on until the consolidated roads form an immense system and not merely a single road.  If we concede that the consolidated company as it was formed in 1864 can be said to have been a company formed under the laws of Michigan, how can this great system of roads that has been united without any reference to our laws, and under the sole authority of other sovereignties, be also said to be formed under, or to owe its existence to, Michigan laws?  The Michigan statute carefully limited the authority to consolidate; and roads that were, or would naturally be, competing roads between the same points, were not allowed to be united under it; but if the view now pressed by the State is sustained, this restriction may be nullified by consolidations subsequent to the one which first merged the Michigan corporation, and we shall be obliged to hold that

we have a corporation formed under the statutes of Michigan which the statute itself expressly forbids. But a postulate that in itself is a contradiction in terms cannot possibly be made the basis for judicial action. See *International &c., R. R. Co. v. Taylor* 53 Tex. 96: s. c. 4 Am. & Eng. R. R. Cas. 308; *State v. Vanderbilt* 37 Ohio St. 590: s. c. 8 Am. & Eng. R. R. Cas. 657.

A further consequence would be involved in this conclusion, which would at least be anomalous, namely, that the amount of State taxation of this or any other such corporation might to a large extent be changed by the corporation itself without the consent of the State and in spite of it. If consolidations may go on indefinitely in distant states and territories—every consolidation of a new line affecting the proportion of gross earnings to the mile of road operated—it is easy to imagine a state of things under which the tax which the State of Michigan would collect might be much less than it would be if it taxed the gross earnings within its own limits, and much less than if it levied the tax upon the road as first consolidated. A fact brought out by this record will serve to illustrate this as well as any other. Had the receipts of the proprietary roads been taken into the account in assessing this tax, the amount payable to the State on the assessment for 1880 would have been some $13,000 less than has already been paid; and this for the simple reason that the gross receipts from the proprietary roads were very much less in proportion to the mileage than the receipts from the consolidated and leased lines. Had the complainant, therefore, consolidated those roads with itself, instead of operating them without consolidation, the State, by acts to which it never assented, and which there is no reason to suppose its Legislature ever contemplated, would have lost a very large share of the tax which it has already collected, and which, having been levied upon the basis of earnings within the State, must be deemed to be a fair and just tax. It is not likely that the Legislature ever intended that the tax on those corporations should be to so large an extent independent of State volition. It is true that the same thing might happen

to some extent by the extension of Michigan roads by mere acquiescence or permission into other states; but it is not likely that long lines would be thus constructed without new grant of corporate powers by the state or states into which the extension was allowed; much less that extensive systems of roads would be created like the one now being considered. Such extensions without new grants of power are more likely to be short, and of local rather than general interest in the state within which they are made.

We appreciate very fully the difficulty of determining under all circumstances in what light we are to regard the anomalous organizations which are formed by the consolidation of two or more corporations which have received their corporate powers from different sovereignties. Some of the difficulties were alluded to in the case of *Lake Shore &c. Ry. Co. v. People* 46 Mich. 193. It is familiar law that each corporation has its existence and domicile, so far as the term can be applicable to the artificial person, within the territory of the sovereignty creating it: *Marshall v. Baltimore &c. R. R. Co.* 16 How. 314 *Chicago &c. Ry. Co. v. Whitton* 13 Wall. 270; *Muller v. Dows* 94 U. S. 444; *Vose v. Reed* 1 Woods 647; *Allegheny County v. Cleveland &c. R. R. Co.* 51 Penn. St. 228; *Lake Shore &c. Ry. Co. v. People* 46 Mich. 193; it comes into existence there by an exercise of sovereign will; and though it may be allowed to exercise corporate functions within another sovereignty, it is impossible to conceive of one joint act, performed simultaneously by two sovereign states, which shall bring a single corporation into being, except it be by compact or treaty. There may be separate consent given for the consolidation of corporations separately created; but when the two unite they severally bring to the new entity the powers and privileges already possessed, and the consolidated company simply exercises in each jurisdiction the powers the corporation there chartered had possessed, and succeeds there to its privileges. *Mississippi Valley Co. v. Chicago &c. R. R. Co.* 58 Miss. 846: s. c. 8 Am. & Eng. R. R. Cas. 575. It may well happen, as indeed it often has, that the consolidated company will be

a corporation possessing in one state very different rights, powers, privileges and immunities to those possessed in another, and subject to very different liabilities. *Delaware Railroad Tax* 18 Wall. 206, 228; *Lake Shore &c. Ry. Co. v. People* 46 Mich. 193. And after the consolidation each state legislates in respect to the road within its own limits, and which was constructed under its grant of corporate power, the same as it did before. *Peik v. C. & N. W. Ry. Co.* 94 U. S. 164. And it cannot follow the new organization with its legislation into another state. *Chicago & N. W. Ry. Co. v. Whitton* 13 Wall. 283. It has been said that the consolidated company exists in each state under the laws of that state alone : *Muller v. Dows* 94 U. S. 444, 447; and this is the effect of the decision in *Delaware Railroad Tax* 18 Wall. 206, and in many other cases. It also follows necessarily from the doctrine maintained by the Federal Supreme Court in respect to the citizenship of corporations. That doctrine is that a corporation is deemed to be a citizen of the state which has created it, and an organization of members who are citizens of that state. When, therefore, two corporations created in different states consolidate, though for most purposes they are not thereafter to be separately regarded, yet in each state the consolidated company is deemed to stand in the place of the corporation to which it there succeeded, and of its members, and consequently to be a citizen of that state for many purposes, while in the other state it would stand in the place of the other corporation in respect to citizenship there. *Ohio &c. R. R. Co. v. Wheeler* 1 Black 286 ; *C. & N. W. R. Co. v. Whitton* 13 Wall. 283; *Allegheny County v. Cleveland &c. R. R. Co.* 51 Penn. St. 228; *Texas &c. R. R. Co. v. McAllister* 59 Tex. 349: 12 Am. & Eng. R. R. Cas. 289.

It follows that the Michigan corporation, which has been consolidated with complainant, is alone of the consolidated organizations to be considered a company formed under the laws of Michigan, and it should have been taxed on the basis on which it was taxed from 1873 to 1878. If the manner in which the consolidated company kept its accounts created any embarrassment, the difficulty might no doubt have been

obviated on the order of the Railroad Commissioner. This, however, is not very important now, as the basis of taxation was changed in 1883, and the question now considered is of practical interest only as regards taxes heretofore accrued.

The complainant is entitled to the relief prayed.

The other Justices concurred.