## 11062

BLUE RIDGE POWER CO. v. SOUTHERN RY. CO. *ET AL.*

(115 S. E., 306)

1. CORPORATIONS—DOMESTICATION MERELY EXTENDS RIGHT TO DO BUSINESS AND SUSCEPTIBILITY TO SUIT.—The domestication of a foreign corporation, under Civ. Code 1912, § 2664 et seq., is nothing more than the extension to it of the privilege or license as a foreign corporation to do business in the State and its susceptibility to service and suit in the State.

2. COURTS—NO JURISDICTION OF SUIT BETWEEN FOREIGN CORPORATIONS ON CAUSE OF ACTION ARISING OUTSIDE THE STATE.—Under Code Civ. Proc. 1912, § 461, the Circuit Court had no jurisdiction of an action

by one foreign corporation against another on a cause of action arising outside the State.

3. Corporations—Foreign Corporation Other Than Railroad Need not Reincorporate Under Laws of State.—A foreign corporation other than a railroad corporation is not required by Constitution or statute to incorporate as a South Carolina corporation, but is simply authorized by Civ. Code 1912, § 2664 et seq., upon complying with the provisions thereof, to conduct business in the State.

4. Railroads—Cannot be Operated by Foreign Corporation.—Under Const. Art. 9, § 8, a foreign corporation cannot operate a railroad in South Carolina at all, and the owners or projectors must first become incorporated under the laws of South Carolina, and operate and manage the railroad and do business under the South Carolina charter.

5. Railroads—Foreign Corporation Owning Railroad and Domestic Corporation of Same Name, Organized to Operate it, Are Distinct.—A Virginia corporation owning a railroad and a South Carolina corporation, organized under Const. Art. 9, § 8, to operate the portion of the railroad within the State of South Carolina, are separate and distinct corporations.

6. Railroads—Property of Foreign Corporation not Transferred to Domestic Corporation.—The granting of a domestic charter for the operation, under Const. Art. 9, § 8, of that portion of a railroad owned by a foreign corporation within the State cannot have the effect of transferring the property of the foreign corporation to the domestic corporation.

7. Railroads—Contract by Domestic Corporations Operating Portion of Foreign Corporation's Railroad Within State Held Ultra Vires.—A domestic corporation, organized pursuant to Const., Art. 9, § 8, to operate so much of a foreign corporation's railroad as is within the State, is limited in its contracts to business done in South Carolina or business outside the State necessarily connected with its operation in South Carolina, and a contract for the building of a bridge in North Carolina would have been *ultra vires* as having no connection with the business of the corporation in South Carolina.

8. Railroads—Domestic Corporation, Operating Portion of Railroad Within State, not Liable on Contracts of Parent Organization.—Domestic corporation, organized under Const. Art. 9, § 8, to operate so much of a foreign corporation's railroad as is within the State, is not responsible on the contracts of the parent organization.

9. Corporations—Cannot do Act not Authorized by Charter in Another State.—A corporation cannot do in a State, other than the State of its creation, an act which its charter does not authorize it to do in the State of its creation.

Before WILSON, J., Spartanburg, October, 1920. Affirmed.

Action by the Blue Ridge Power Company against the Southern Railway Company and another. From a judgment dismissing the complaint on demurrer by the defendant named, plaintiff appeals. Affirmed.

The grounds of appeal were as follows:

Because his Honor erred in sustaining said demurrer; it being resepectfully submitted:

First. That it appears from the allegations of the complaint, which are admitted by the demurrer (and also admitted by the defendant as shown by the order of the presiding Judge), that the plaintiff has complied with the law of South Carolina for domestication in accordance with chapter 44, § 2664 et seq., of Volume I of the Code of 1912, and thereby acquired all the rights and powers of a domestic corporation in South Carolina, including the right and power to maintain this suit against the Southern Railway Company, in this jurisdiction.

Second. That it appears from the allegations of the complaint, admitted by the demurrer (and also admitted by the defendant as shown by the order of the presiding Judge), that the Southern Railway Company has complied with the laws of South Carolina for domesticating as a railway company, and that it has thereby subjected itself to the jurisdiction of this Court in this action, the same as if it were a railway company organized under the laws of this State.

Third. Under the Statute Law, as embodied in Section 2664 et seq. and Sections 3104 and 3105 of Volume I of the Code of Laws of South Carolina 1912, the Court of Common Pleas for Spartanburg county has full jurisdiction over defendant Southern Railway Company to hear and determine this action.

Fourth. Under the act of the Legislature of South Carolina, passed the 19th day of February, 1902 (pages 1152 and 1153 of the Acts of 1902), entitled "An Act to authorize

the consolidation or merger of the capital stock, franchises and properties of the Asheville and Spartanburg Railroad Company, the South Carolina & Georgia Railroad Company, the South Carolina & Georgia Railroad Extension Company and the Carolina Midland Railway Company under the laws of this State, and to authorize and empower such consolidated company to make a lease of its railroads, properties and franchises to the Southern Railway Company," the defendant Southern Railway Company bound itself to "be and remain subject to suit in the Courts of this State for all causes of action that may hereafter arise out of the operation of said lines of railroad as fully and effectually as the roads in said consolidation and lease were subject to suit in such Court." It therefore follows that the Court of Common Pleas for Spartanburg county has full jurisdiction of the defendant Southern Railway Company to hear and determine this action.

Fifth. That it appears from the complaint admitted by the demurrer, that the plaintiff maintained an office in Spartanburg, where it transacted business, and that a large part of its business transactions, out of which this action arose, was conducted from the office in Spartanburg, S. C.; that the railroad on which the bridge in question was constructed was a continuous line extending from Spartanburg to Asheville, N. C.; that the money, if it had been paid by the defendant, would have been paid to the plaintiff in South Carolina; under these circumstances the plaintiff contends that this case does not come under Section 461 of the Code of Procedure in South Carolina, but if it does come under that section, it should be considered that this cause of action arose in South Carolina.

*Messrs. Bomar, Osborne & Brown, W. W. Lewis* and *Tillett & Guthrie,* for appellant, cite: *Plaintiff as a domesticated corporation is entitled to sue in this State:* 1 Civ. Code 1912, Secs. 2664 et seq., 2792; Art. 1, Chap. 49.

*Person may be a resident while not a citizen:* 16 S. E., 538. *Domestication of railroad corporations:* 22 Stat., 114; 49 S. C., 49. *Status of domesticated railroad corporation:* 53 S. C., 246; 64 S. C., 139; 72 S. C., 479; 80 S. C., 355; 84 S. C., 318; 161 U. S., 545; 204 U. S., 103, *and of any domesticated foreign corporation:* 243 U. S., 93. *If there is inconsistency between general and special act the special must prevail:* 36 Cyc., 1151. *Corporation has residence where it does business:* 78 S. C., 323; 20 L. Ed., 192; 98 Pa. St., 90; 80 Okla., 151; 83 Wis., 598. *Venue is at place where payment should have been made:* 40 Cyc., 82; Hard. (Ky.), 68.

*Messrs. S. R. Prince, DePass & Wrightson* and *Haynesworth & Haynesworth,* for respondent, cite: *Cause of action on contract arises at point of performance:* 39 S. C., 484; 46 S. C. 541; 17 S. C., 410; 37 S. C., 444; 37 S. C., 406; 32 S. C., 342. *Domesticated foreign corporation is non-resident:* 146 Pac., 101; 66 Pac., 826; 70 L. R. A., 691; 51 Col., 238; 117 Pac., 899; 101 Pac., 41; 171 Mass., 154; 1 Fletcher Corp., Secs., 387–397; 104 U. S., 5; 145 U. S., 333; 8 Wall, 168; 12 Wall, 65; 106 U. S., 350; 109 U. S., 527; 226 Fed., 893. *And subject to jurisdiction of State Courts only in cases arising in the State:* 93 S. C., 110; 204 U. S., 8; 236 U. S., 115; 66 L. Ed., 102; 66 L. Ed., 224; 174 U. S., 561; 136 U. S., 356. *Southern Railway is separate corporation as to portions of its line in different States:* 107 U. S., 581; 136 U. S., 356; 94 U. S., 444; 88 Ill., 615; 18 N. W., 586; 1 Ell. Railroads, 49 Sec. 28.

December 5, 1922.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Action for $253,924.60 damages on account of the alleged breach of a contract entered into between Blue Ridge

Power Company and Southern Railway Company in October, 1916, relating to the construction of a railway bridge over Green river in the State of North Carolina. The contract is alleged to have been executed in the city of Washington.

The action was commenced in February, 1921, against both of the defendants above named. The complaint alleges that the plaintiff was a corporation, duly chartered and organized under the laws of North Carolina, and that thereafter "the plaintiff duly domesticated pursuant to the laws of the State of South Carolina." It is assumed that the plaintiff complied with Chapter 44, § 2664 et seq., Code of Laws A. D. 1912. It further alleges that the defendant Southern Railway, Carolina Division, was a railroad corporation duly chartered and organized under the laws of the State of South Carolina, and owned a line of railway between Spartanburg, S. C., and Asheville, N. C., which was under lease to the defendant Southern Railway Company, by virtue of the Act of February 19, 1902, Statutes of South Carolina, Vol. 23, page 1152. It further alleges that the defendant Southern Railway Company was a railroad corporation duly chartered and organized under the laws of Virginia and "domesticated under the laws of South Carolina."

It will be noted in passing that there is no allegation in the complaint that the defendant Southern Railway Company was a corporation under the laws of South Carolina, or that it was sued as such, or that it entered into the contract alleged to have been breached in its capacity as a South Carolina corporation. The inference is that it occupied exactly the same legal position in South Carolina ascribed to the plaintiff; that is, of a domesticated foreign corporation. The domestication of a foreign corporation is nothing more than the extension to it of the privilege or license as a foreign corporation to do business

in this State, and its susceptiblilty to service and suit in the State.

The defendant Southern Railway Company interposed a demurrer to the complaint upon the ground that it appeared upon the face of the complaint that both the plaintiff and the demurring defendant were foreign corporations; that the cause of action did not arise in this State; that the subject of the action was not situated in this State; and that for these reasons the Court of Common Pleas for Spartanburg county in this State was without Jurisdiction in the action. The Circuit Judge sustained the demurrer and dismissed the complaint, holding that both corporations had been domesticated in this State; that nevertheless, the cause of action having arisen in North Carolina, the Court was without jurisdiction. The plaintiff has appealed upon exceptions which will be reported.

It is clear that, if the demurrant's position can be sustained, both corporations are foreign corporations, and the cause of action arose in North Carolina, the demurrer was properly sustained under Section 461 of the Code of Civil Procedure which provides:

"An action against a corporation created by or under the laws of any other State, government, or country, may be brought in the Circuit Court * * * by a plaintiff not a resident of this State when the cause of action shall have arisen, or the subject of the action shall be situated, within this State."

The inevitable inference is that a foreign corporation may sue a resident of this State, individual or corporate, as an individual resident or nonresident may sue; that a resident of this State may sue a foreign corporation for any cause of action; but that a nonresident, individual or corporate, may not sue a foreign corporation except in the specified cases: Where the cause of action arose in this State, or the subject of the action was here situated. It follows that if the

plaintiff is a foreign corporation and the demurrant also is a foreign corporation and the cause of action arose outside of this State, the Court had no jurisdiction.   It is vital, therefore, to ascertain and declare the legal status of both the Blue Ridge Power Company and the Southern Railway Company.

It is conceded that the Blue Ridge Power Company is a corporation chartered and organized under the laws of North Carolina, and that it has complied with the provisions of the South Carolina Statute to enable it to do business as a foreign corporation in this State.   Not being a railroad corporation, it is not required by the Constitution or Statutes of South Carolina to be incorporated as a South Carolina corporation; that requirement applying only to railroad corporations.   It is simply authorized by the statute, upon complying with its provisions, to conduct its business in this State.

"Acts of the Legislature creating corporations must be distinguished from acts which merely recognize a corporation chartered by another State, and allow it to exercise some or all of its functions or powers within the State.   If the statute has this effect only, it does not make the corporation a domestic corporation at all; it remains a foreign corporation only, with a domicile or residence and citizenship in the State of its creation only."   14 A. C. J., 1231.

"In order to make a corporation already in existence under the laws of one State a corporation of another State, the language used must imply creation or adoption in such form as to confer the power usually exercised over corporations by the State or by the Legislature, and such allegiance as a State corporation owes to its creator.   The mere grant of privileges or powers to it as an existing corporation without more does not do this."   *L. N. A. & C. R. Co. v. Trust Co.,* 174 U. S., 552; 19 Sup. Ct., 817; 43 L. Ed., 1081; *Penn. Ry. Co. v. Ry. Co.,* 118 U. S., 290; 6 Sup. Ct., 1094; 30 L. Ed., 83; *Goodlett v. Ry. Co.,* 122 U. S., 391; 7 Sup.

Ct., 1254; 30 L. Ed., 1230; *Railroad Co. v. James,* 161 U. S., 545; 16 Sup. Ct., 621; 40 L. Ed., 802.

The status of the defendant Southern Railway Company, however, is entirely different. It is a railroad corporation, organized and chartered under the laws of Virginia, and is prohibited by Const. Art. 9, § 8, from operating a railroad in South Carolina at all. The railroad in South Carolina belonging to the foreign corporation can be operated only after "the owners or projectors thereof shall [have] first become incorporated under the laws of this State," and the owners "shall thereafter operate and manage the same and the business thereof under said domestic charter"; that is, under the charter issued by the State of South Carolina.

Although the complaint only alleges that the Southern Railway Company "domesticated under the laws of South Carolina," which is not at all equivalent to the allegation that it has complied with the constitutional requirement of securing a charter from the State, in view of the illegality of its operation of the railroad in South Carolina under any other circumstances, for the purposes of this case, it will be assumed that the owners of the railroad have secured such charter, and that the railroad in South Carolina is being managed and operated under a South Carolina charter. So then we have this anomalous condition: The Southern Railway Company, the Virginia corporation, owns the entire railroad property, including that portion of it in South Carolina; but the latter, so far as the business in South Carolina is concerned, is managed and operated under the South Carolina charter.

There are then two separate and distinct corporations, the Virginia corporation and the South Carolina corporation; the former covering the entire property, and the latter being managed and operated, so far as business in South Carolina is concerned, under the South Carolina charter. The granting of a domestic charter to

the owners of a foreign corporation certainly could not have the effect of transferring the property of the foreign corporation to the domestic corporation. The domestic corporation is therefore a corporation without assets, a species of legislative fiction, intended to make the corporation operating the railroad subject to the laws of South Carolina, particularly in the matter of removal to the United States Courts, which evidently was the purpose of the law. This purpose has been defeated by the Supreme Court of the United States by the decisions cited and followed by this Court in *Wilson v. Railroad Co.,* 64 S. C., 162; 36 S. E., 701; 41 S. E., 971. However incongruous this may and does appear, it is thoroughly established and recognized by the decisions of the Supreme Court of the United States:

"Nor do we see any reason why one State may not make a corporation of another State, as there organized and conducted, a corporation of its own, *quo ad hoc* any property within its territorial jurisdiction." *Railroad Co. v. Harris,* 12 Wall., 65; 20 L. Ed., 354.

"This Court has often recognized that a corporation of one State may be made a corporation of another State by the Legislature of that State, in regard to property and acts within its territorial jurisdiction." *L. N. A. & C. R. Co. v. Trust Co.,* 174 U. S., 552, 562; 19 Sup. Ct., 817; 821 (43 L. Ed., 1081).

"Although from one point of view, it may be regarded as a single corporation or unit, yet from another it is not the same, but a district corporation in each State, so far as its property and business within that State are concerned, and is controlled therein as to such matters by the laws of the State, substantially as any other domestic corporation is controlled." 1 Elliott (3d Ed.) § 35; *Piek v. Railroad Co.,* 94 U. S., 164; 24 L. Ed., 97.

So that, even if the contract had been entered into by the South Carolina corporation, it would have been *ultra vires,* as having no connection with the business of that corporation in South Carolina.

16—S. C.—122

As stated above, however, the action is not brought against the Southern Railway Company as a South Carolina corporation; the defendant is not by that name alleged to be a South Carolina corporation; and the contract for the breach of which damages are claimed is not alleged to have been made with the Southern Railway Company as a South Carolina corporation; and it would seem to be absurd to attempt to hold the South Carolina corporation responsible for the breach of a contract which it did not enter into. It cannot be contended that the South Carolina corporation is responsible for the engagements of the parent organization whenever and under whatsoever circumstances assumed. This is in effect what the plaintiff is endeavoring to do. But suppose these allegations had been made in the complaint, it is perfectly clear that the allegations of the complaint negative them and show the utter impossibility of their truth.

The South Carolina corporation, under whose charter the railroad and its business in South Carolina was being managed and operated is necessarily limited in its contracts to business done in South Carolina, or to business outside the State necessarily connected with its operation in South Carolina.

"A corporation can exercise no powers in a State other than that of its creation except such as are conferred upon it by its charter and the laws creating it and covering it." 14 A. C. J., 1234, citing many cases.

This does not mean that the corporation chartered by one State cannot do business in another State unless the charter authorizes it to do so; but it means that the act in question must be one which the charter authorizes it to do in the State of its creation. See 14 C. J., § 421. p. 342.

The Supreme Court of the United States said in an early case:

"A corporation can have no legal existence out of the boundaries of the sovereignty by which it is created. It exists only in contemplation of law, and by force of the law; and where the law ceases to operate, and is no longer obligatory, the corporation can have no existence. It must dwell in the place of its creation and cannot migrate to another sovereignty." *Bank v. Earle,* 13 Pet., 519; 10 L. Ed., 274.

It follows that in this dual relation the Southern Railway Company under its South Carolina charter is a domestic corporation of the State so far as the power derived from the State to manage and operate the railroad and transact business in the State is concerned, and in every other respect it retains its charter as a foreign corporation.

"It is a domestic corporation as to the power derived from the State in which it acts, and a foreign corporation in respect to other sources of its existence." 2 L. R. A., 566, note. Case, 2 Bland. Ch., 99; *State v. Ry. Co.,* 18 Md., 193; *Railroad Co. v. Glenn,* 28 Md., 287; 92 Am. Dec., 688; *Railroad Co. v. Auditor,* 53 Mich., 79; 18 N. W., 586; *McGregor v. Railroad Co.,* 35 N. J. Law, 89; *Sage v. Railroad Co.,* 70 N. Y., 220; *Sprague v. Railroad Co.,* 5 R. I., 233; *Ohio & M. R. Co. v. Wheeler,* 66 U. S. (1 Black), 286; 17 L. Ed. 130.

"Where a corporation is manifestly intended for local objects only and its capacities are limited to a particular place, it will be presumed that the powers conferred on it are intended to be exercised only within the limits of such place, and it cannot exercise them in other jurisdictions." 14 C. J., 343.

It may be assumed that there are various issues of bonds executed by the parent corporation secured by mortgages upon its entire property. Could it be contended that they were the corporate action of the South Carolina corporation? Would an intelligent attorney bring an action against the South Carolina corporation to foreclose those mortgages? There can be no difference between a contract of

the parent organization under which damages for its breach are claimed and the bonds of the corporation secured by mortgage. The one is none the less the act of the parent organization and not of the local corporation as the other.

The plaintiff is in this predicament: If the contract was made with the parent organization and it was sued, the action would be by a foreign corporation against a foreign corporation upon a cause of action that did not arise in South Carolina; if he means to allege that the contract was made with the South Carolina corporation (which is very far from being done), his facts contradict that allegation, and show that it not only was not so consummated, but that it could not have been done.

The argument that under the Act of 1902, by which the Southern Railway Company was authorized to lease the Southern Railway, Carolina Division, the Southern Railway assumed certain obligations in connection with the enjoyment of that lease, has absolutely no force, for the reason that those obligations were the obligations of the parent organization, and not of the South Carolina corporation, and is based upon the manifestly untenable position that the South Carolina corporation may be held answerable for the contract obligations of the parent organization, a separate and distinct corporation.

The Circuit Judge was therefore clearly right in sustaining the demurrer.

Judgment affirmed.

MR. JUSTICES WATTS and MARION concur.

MR. JUSTICE FRASER (dissenting) : "This is an action on account growing out of an alleged breach of contract for the construction of a railway bridge over Green river, in North Carolina, and for relocating the tracks and other work in connection therewith. The trestle is situated on the line of railroad from Spartanburg to Asheville owned by the defendant Southern Railway, Carolina Division, and leased to the defendant Southern Railway Company, under

and by virtue of an Act of the Legislature of South Carolina passed in 1902. Volume 23, Statutes, pages 1152 and 1153. The action was begun in the Court of Common Pleas for Spartanburg county by service of summons and complaint. An attempt was made by defendant to move the cause to the District Court of the United States for the Western District of South Carolina, but the case was remanded by his Honor, Judge Watkins, Judge of said District Court, to the Court of Common Pleas for Spartanburg county."

The complaint alleges that certain citizens of Spartanburg, S. C., desiring to establish a plant for the generation and distribution of electric power, secured a charter from the State of North Carolina to dam up and use the waters of Green River in North Carolina; that as they were selling much of their power in Spartanburg they took out a domesticated charter in the State of South Carolina, with its principal place of business in Spartanburg; that they put a dam below the Southern Railway track in North Carolina, and backed the water under the Southern Railway trestle; that this necessitated a new trestle; that the Southern Railway domesticated its charter under the laws of the State of South Carolina, and leased the railroad of the Southern Railway, Carolina Division, which is purely a South Carolina corporation; that the Southern Railway, acting for itself and the Southern Railway Company, Carolina Division, entered into a contract with the plaintiff for the construction of the trestle in North Carolina. The plaintiff alleges a breach of the contract, and this action is brought for the breach. The Southern Railway demurred, and the following is the demurrer:

"The defendant Southern Railway Company, appearing only for the purpose of making this demurrer, demurs to the complaint herein on the ground that it appears upon the face thereof that the Common Pleas Court of Spartanburg County had no jurisdiction of this action or the subject of

this action, as against this defendant, in that it appears from the allegations of the complaint that the plaintiff is not a resident of this State, but is a corporation created under the laws of the State of North Carolina, and that this defendant is a corporation created under the laws of the State of Virginia, and that the cause of action did not arise in this State, nor is the subject of the action situate therein, and in that this Court is therefore without jurisdiction over said cause of action."

Upon that demurrer the following order was passed:

"This matter comes before me on a demurrer of the defendant Southern Railway Company to the jurisdiction of the defendant upon the grounds stated in the demurrer. After full argument, it is ordered that the demurrer be, and is hereby, sustained, and the complaint be, and is hereby, dismissed as to the defendant Southern Railway Company on the ground that while both corporations have been domesticated in this State, the cause of action arose in North Carolina, and this Court has no jurisdiction."

From this order this appeal is taken.

It will be observed that the order adjudges that both the plaintiff and the Southern Railway are domesticated corporations. From this finding there is no appeal. A proposed corporation may be domesticated in two ways, i. e., by adoption and by creation. Whatever may be said about other foreign corporations, a railroad corporation under our Constitution can exist in this State only by creation.

The Constitution of this State provides (Article 9):

"Sec. 8. The General Assembly shall not grant to any foreign corporation or association a license to build, operate or lease any roalroad in this State; but in all cases where a railroad is to be built or operated, or is now being operated, in this State, and the same shall be partly in this State and partly in another State, or in other States, the owners or projectors thereof shall first become incorporated under the laws of this State; nor shall any foreign corporation or as-

sociation lease or operate any railroad in this State, or purchase the same or any interest therein. Consolidation of any railroad lines and corporations in this State with others shall be allowed only where the consolidated company shall become a domestic corporation of this State. No general or special law shall ever be passed for the benefit of any foreign corporation operating a railroad under an existing license of this State or under any existing lease, and no grant of any right or privilege and no exemption from any burden shall be made to any such foreign corporation, except upon the condition that the owners or stockholders thereof shall first organize a corporation in this State under the laws thereof, and shall thereafter operate and manage the same and the business thereof under said domestic charter."

"Sec. 17. The General Assembly shall never remit the forfeiture of the franchise of any corporation now chartered, nor alter nor amend the charter thereof, nor pass any general or special law for the benefit of such corporation, except upon the condition that such corporation shall thereafter hold its charter and franchise subject to the provision of this Constitution, and the acceptance by any corporation of any provision of any such laws or the taking of any benefit from the same shall be conclusively held an agreement by such corporation to hold its charter and franchise under the provisions of this article."

It is manifest that no act of the Legislature can be passed by new enactment or repeal of an existing act that can be passed by new enactment or repeal of an existing act that can permit a foreign railroad company to own, lease, or operate a railroad in this State. The term "domesticate" is confusing. It may mean that this State has simply adopted a foreign corporation and permitted it to operate in this State while still retaining its foreign nature. The Constitution of this State clearly precludes that mistake when it says that in order to operate a railroad in this State it shall become a domestic corporation and operate under

said domestic charter. There is no question of a paramount authority of the Federal Constitution and laws. Judge Watkins of the Federal Court has settled that question so far as this case is concerned. If this Court shall hold that the Southern Railway is a foreign railroad corporation, operating a railroad in this State, it would amount to a repeal of these constitutional provisions. This Court has no such power. The plaintiff is also a domestic corporation; it may be by adoption, but it is none the less a domestic corporation.

We are presented with this proposition: That one domestic corporation cannot maintain an action against another domestic corporation for the breach of its contract, because the work was to be done outside of the limits of this State. This is manifestly untenable.

The order sustaining the demurrer is reversed, and the case is remanded to the Circuit Court, with leave to the appellant to answer within 20 days after written notice of the filing of the remittitur in the Circuit Court.

MR. CHIEF JUSTICE GARY concurs.