FITZGERALD *v.* MISSOURI PAC. RY. CO. *et al.*

(*Circuit Court, D. Nebraska.* April 16, 1891.)

1. REMOVAL OF CAUSES—AMENDMENT OF APPLICATION.
   The case as made by the petition for removal and the pleadings at the time of the removal is the test of the right to remove; and no amendment can be made in the circuit court, setting up grounds for removal which were not presented to the state court on the motion to remove.

2. FEDERAL COURTS—DECISIONS OF STATE COURTS.
   The decision of the supreme court of the state that a particular corporation is a corporation of that state is binding on the federal court.

3. CONSOLIDATION OF CORPORATIONS—CITIZENSHIP.
   When a consolidated company is formed by the union of several corporations chartered by different states it is a citizen of each of the states which granted the charter to any one of its constituent companies, and when sued in one of these states it cannot claim the right of removal on the ground that it is also a citizen of another state.

4. SAME.
   A consolidated corporation which bears the same name in three states, and has one board of directors and the same share-holders, and operates the road as one entire line, and is designed to accomplish the same purposes, and exercises the same general corporate powers and functions in all the states, is not the same corporation in each state. While it is a unit, and acts as a whole, in the transaction of its corporate business, it is not a corporation at large, nor is it a joint corporation of the three states. Like all corporations, it must have a legal dwelling place, and it dwells in three states, and is a separate and single entity in each. It is, in effect, a corporate trinity, having no citizenship of its own distinct from its constituent members, but a citizenship indentical with each.

**5. SAME—CONTRACTS.**

In the conduct of its corporate business the consolidated corporation acts as a unit,—as one corporation, and not three; and, in the absence of a statutory provision to the contrary, it may transact its corporate business in one state for all, and the contracts it enters into and the liabilities it incurs in one state are binding upon it in all the states, and may be enforced against it in any one of them, when the action is transitory.

**6. EMINENT DOMAIN—SECURING RIGHT OF WAY.**

The act of congress prescribing the mode in which a railroad company may secure the right of way through the public lands construed, and *held* that it is the duty of the railroad company, and not the contractor building the road, to do the things required by the act to secure the right of way.

**7. CORPORATIONS—CONTROL OF CORPORATE PROPERTY.**

The owner of all the stock and bonds of a corporation does not own the corporate property. The corporate property, which includes all rights of action and claims for damages, belongs to the corporation, and is subject to the management and control of its board of directors.

**8. REMOVAL OF CAUSES—JURISDICTION—FEDERAL QUESTION.**

No federal question is raised in a case by an answer that is bad in substance without reference to the federal question.

**9. SAME.**

A cause is not removable simply because in its progress it may become necessary to construe or apply an act of congress. Unless there is a dispute between the parties as to the meaning of the act, there is no federal controversy between them. The decision of the case, or some material issue in it, must depend upon a construction of the act claimed by one party and denied by the other. A simple averment that such is the fact is stating a conclusion, and is not sufficient; the facts that show it to be true must be set out.

**10. SAME—REMAND TO STATE COURT.**

When it is settled that the jurisdiction of the circuit court in a removal cause is doubtful, all doubt as to what the court should do is dispelled, and the cause will be remanded. This rule is in harmony with the spirit and design of the act of congress repealing the act which allowed an appeal or writ of error from an order remanding a cause.

*(Syllabus by the Court.)*

In Equity.   Removal from state court.
*Marquett, Deweese & Hall,* for plaintiff.
*B. P. Waggener* and *R. S. Hall,* for defendants.

CALDWELL, J.   This cause was removed by the defendant the Missouri Pacific Railway Company from the state court into this court. The question now to be considered is whether it was properly removed. The suit is brought by the plaintiff as a stockholder in the defendant corporation the Fitzgerald & Mallory Construction Company, hereafter designated as the "Construction Company," on behalf of himself and all other stockholders of that company, to compel an accounting between that company and the defendant the Missouri Pacific Railway Company.

The railway company sets up two grounds for removal,—diverse citizenship and a federal question.

1. The averments in the petition for removal touching the citizenship of the parties are as follows:

"Your petitioner further avers that at the commencement of this suit the said plaintiff was and still is a citizen of the state of Nebraska, and at the commencement of this suit the defendant the Fitzgerald & Mallory Construction Company was and still is a corporation created, chartered, and organized under and by virtue of the laws of the state of Iowa; and your petitioner avers that it is advised and believes, and so charges the fact to be, that for the purpose of this action it was at the commencement of this suit, and still is, a corporation chartered, incorporated, and created under and by virtue of the

laws of the state of Kansas; that prior to the commencement of this action your petitioner was made up of three several constituent companies, to-wit, a railroad company chartered, organized, created, and existing under and by virtue of the laws of the state of Missouri, a railroad company chartered, organized, created, and existing under the laws of the state of Kansas, and a railroad company chartered, organized, created, and existing under the laws of the state of Nebraska; that the said Missouri and Kansas corporations were, by due proceedings had under and by virtue of the laws of each of said several states, duly consolidated under the name of the ' Missouri Pacific Railway Company,' and subsequent thereto the said consolidated company was, by due proceedings had in 1882, duly consolidated with the Missouri Pacific Railway Company in Nebraska, which said latter consolidation was in all respects under and in pursuance of the consolidation and laws of the state of Nebraska, and that for the purpose of all contracts entered into in said state of Nebraska, and all causes of actions which accrued against said the Missouri Pacific Railway Company in said state of Nebraska, and for the enforcement of all statutory obligations by said consolidation, it became and was, and still is, a corporation organized, created, and existing in pursuance of the laws of the state of Nebraska; but your petitioner avers that said pretended cause of action set forth in plaintiff's petition filed herein arose and accrued out of a certain contract entered into between the said Fitzgerald and Mallory Construction Company and the said the Missouri Pacific Railway Company, as chartered, organized, created, and existing under and by virtue of the laws of the state of Kansas; * * * and your petitioner thereon avers that it is advised and believes that by reason of said matters and things, for the purpose of this action only, and by reason of the obligations, if any, growing out of contract relations between your petitioner and the said Fitzgerald & Mallory Construction Company, your petitioner was at the commencement of this suit, and still is, a citizen of the state of Kansas."

Like averments are made in the answer filed with the petition for removal in the state court. The case as made by the petition for removal and the pleadings at the time of the removal is the test of the right to remove. *Graves* v. *Corbin*, 132 U. S. 571, 10 Sup. Ct. Rep. 196; *Jackson* v. *Allen*, 132 U. S. 27, 10 Sup. Ct. Rep. 9; *Rothschild* v. *Matthews*, 22 Fed. Rep. 6; *Stevens* v. *Nichols*, 130 U. S. 230, 9 Sup. Ct. Rep. 518. No amendment can be made in the circuit court setting up grounds for removal which were not presented to the state court on the motion to remove. *Id.*, and *Cameron* v. *Hodges*, 127 U. S. 322, 8 Sup. Ct. Rep. 1154; *Crehore* v. *Railroad Co.*, 131 U. S. 240, 9 Sup. Ct. Rep. 692. The supreme court of Nebraska has decided that the railway company is a corporation of the state. The decision was rendered in a case brought against the railway company for the purpose of determining that question. *State* v. *Railway Co.*, 25 Neb. 164, 41 N. W. Rep. 127. The decision is conclusive upon the question in this court, and puts an end to the defendant's claim to remove this cause on the ground of citizenship. But, independently of that decision, upon the averments of the petition for removal and the answer, it sufficiently appears that the defendant is a corporation and citizen of Nebraska. A denial of its citizenship in Nebraska, in the face of the facts set out in the petition for removal and the answer, is simply a denial of the law. It has long been settled law that when a consolidated company is formed by the union of several corporations chartered by different states it is a citizen of each of

the states which granted the charter to any one of its constituent companies, and when sued in one of those states it cannot claim the right of removal on the ground that it is also a citizen of another state.     Dill. Rem. Causes, § 104, and cases cited; Mor. Priv. Corp. § 101; Fost. Fed. Pr. § 19.     It is expressly averred in the petition for removal that the defendant the Missouri Pacific Railway Company was formed by the consolidation of companies originally chartered by the states of Missouri, Kansas, and Nebraska.     This makes the consolidated company, for all purposes of jurisdiction in the federal courts, a citizen of each of those states.     Although it bears the same name in the three states, has one board of directors and the same shareholders, and operates the road as one entire line, and is designed to accomplish the same purposes, and exercises the same general corporate powers and functions in all the states, it is not the same corporation in each state, but a distinct and separate entity in each.     It is a corporate trinity, having no citizenship of its own distinct from its constituent members, but a citizenship identical with each.     By the consolidation the corporation of one state did not become a corporation of another, nor was either merged in the other.     The corporation of each state had a distinct legislative paternity, and the separate identity of each as a corporation of the state by which it was created, and as a citizen of that state, was not lost by the consolidation.     Nor could the consolidated company become a corporation of three states without being a corporation of each or of either.     While the consolidated corporation is a unit, and acts as a whole in the transaction of its corporate business, it is not a corporation at large, nor is it a joint corporation of the three states.     Like all corporations, it must have a legal dwelling place.     Every corporation, not created by act of congress, dwells in a state.     This consolidated corporation dwells in three states, and is a separate and single entity in each.

For the purposes of jurisdiction in the federal courts, and securing to the states the exercise of their just powers over corporations of their own creation, and over property within their jurisdiction, the consolidated company is conclusively presumed to be a citizen of each of the states whose laws and corporations contributed to its formation.     It enjoys in each state all the powers and privileges the corporation there chartered had, and must answer in the courts and is amenable to the laws of each state respectively as a corporation of that state.     *Railway Co.* v. *Whitton*, 13 Wall. 270; *Muller* v. *Dows*, 94 U. S. 444; *Farnum* v. *Canal Co.*, 1 Summ. 46; *St. Louis, A. & T. H. R. Co.* v. *Indianapolis & St. L. R. Co.*, 9 Biss. 144; same case under title of *Pennsylvania R. Co.* v. *St. Louis, etc., R. Co.*, 118 U. S. 290, 6 Sup. Ct. Rep. 1094; *Racine, etc., R. Co.* v. *Farmers' L. & T. Co.*, 49 Ill. 331; *Quincy R. Co.* v. *Adams Co.*, 88 Ill. 615; *Chicago, etc., R. Co.* v. *Auditor General*, 53 Mich. 91, 18 N. W. Rep. 586; *Horne* v. *Railroad Co.*, 62 N. H. 454; *Paul* v. *Baltimore, etc., R. Co.*, 44 Fed. Rep. 513; *Nashua & L. R. Corp.* v. *Boston & L. R. Corp.*, 136 U. S. 356, 382, 10 Sup. Ct. Rep. 1004; *Pacific Ry. Co.* v. *Missouri Pac. R. Co.*, 23 Fed. Rep. 565; *Guinault* v. *Railroad Co.*, (La.) 6 South. Rep. 850; *Central Trust Co.* v. *St. Louis, etc., R. Co.*, 41 Fed. Rep.

551. It is not averred in the petition for removal that the defendant is not a citizen of Nebraska. The averment, is "that for the purposes of this action it was at the commencement of this suit, and still is, a corporation chartered, incorporated, and created under and by virtue of the laws of the state of Kansas." This ambiguous and insufficient averment as to citizenship is afterwards explained to mean that the subject-matter of the suit is such that the defendant is not liable to a suit thereon in Nebraska, but only in Kansas. But a Nebraska corporation cannot remove a suit from a court of that state into the circuit court of the United States because it thinks the suit ought to have been brought against it, or some other corporation, in another state. If the defendant is not liable to be sued in this state for the subject-matter of the action, that is ground for defense, but is no cause for removal. But in the conduct of its corporate business the consolidated corporation acts as a unit,—as one corporation and not three; and, in the absence of a statutory provision to the contrary, it may transact its corporate business in one state for all, and the contracts it enters into and the liabilities it incurs in one state are binding upon it in all the states, and may be enforced against it in any one of them when the action is transitory. *Graham* v. *Railroad Co.*, 118 U. S. 169, 6 Sup. Ct. Rep. 1009; *Horne* v. *Railroad Co.*, 62 N. H. 454.

2. The case made by the bill involves no federal question. The facts relied upon as showing that there is a federal question in the case are set out in the petition for removal and answer, and are in substance as follows: The Construction Company—in form a defendant, but in reality the plaintiff, and to be so regarded in the consideration of this question —entered into a written contract on the 28th day of April, 1886, with the Denver, Memphis & Atlantic Railway Company—hereafter designated as the "Denver Company"—by which it agreed to construct for the latter company "a line of railroad from the east line of Kansas to the west line thereof," for which it was to receive $16,000 full-paid stock, (less the stock given for municipal and county aid, estimated at $3,500 per mile,) and $16,000 of the first mortgage bonds of the Denver Company, for each mile of road constructed. That contract stipulated that the Denver Company "agrees to procure or cause to be procured the right of way for said line of railroad, at the proper time, in advance of the work, so as not to impede or delay construction. * * *" On the 4th day of May, 1886, the defendant the Missouri Pacific Railway Company and the Construction Company entered into a contract, the provisions of which, so far as they are material to this question, are as follows:

"Memorandum of agreement, made on the fourth day of May, 1886, between the Missouri Pacific Railway Company, party of the first part, and the Fitzgerald & Mallory Construction Company, party of the second part, witnesseth: Whereas, the party of the second part has made a contract with the Denver, Memphis & Atlantic Railway Company to construct its road from Chetopa, across the state of Kansas, on a line heretofore agreed upon, (a copy of which is hereto attached and made a part of this agreement;) and whereas, the Missouri Pacific Railway Company is desirous of obtaining control of the

said line of railroad,—it is agreed as follows: *First.* The party of the second part will sell to the party of the first part all of the securities which the party of the second part is to receive under the terms of a contract dated April 28, 1886, between the Fitzgerald & Mallory Construction Company and the Denver, Memphis & Atlantic Railway Company, for the construction of its road; said securities amounting to sixteen thousand (16,000) dollars per mile of stock and sixteen thousand (16,000) per mile of first mortgage bonds, less the amount of stock that has to be given for municipal and county aid, estimated at about thirty-five hundred (3,500) per mile, and receive in full payment for the same twelve thousand (12,000) per mile of Missouri Pacific Railway five (5) per cent. bonds, to be secured by a deposit of the securities above referred to with a trustee. \* \* \* "

It is alleged that under the provisions of this contract the defendant received from the Construction Company the bonds and stock of the Denver Company, in exchange for its own bonds, as provided in the contract. And it is averred that about 15 miles of the road of the Denver Company was built over the public lands of the United States, without securing the right of way over such lands in the mode required by the act of congress; and it is alleged this was the fault of the Construction Company, and the defendant pleads it as a "failure of consideration" for "the securities so" sold to the defendant to the extent of \$12,000 per mile for each mile of the road constructed over the government lands, that being the amount per mile that the defendant paid the Construction Company for the stock and first mortgage bonds of the Denver Company under the contract of May 4, 1886. It is said this defense is founded on the act of congress regulating the mode of acquiring the right of way over government lands, and involves the proper construction of the act. There are several sufficient answers to this contention. If the right of way was not procured over the government lands, it was no fault of the Construction Company. The contract between that company and the Denver Company expressly provides that the latter company shall "procure or cause to be procured the right of way for said line of railroad."

The defendant seeks to avoid the force of this provision of the contract by alleging that after its execution—

"It was agreed and understood that said clause of said contract should be construed to mean that the said Fitzgerald & Mallory Construction Company should have the right to use the name of the said Denver, Memphis & Atlantic Railway to the extent that it was lawful so to do, for the purpose of exercising the right of eminent domain, and securing the lawful right of way over the lands and public domains of the United States."

But seemingly not satisfied with the accuracy of this statement of the new agreement, the pleader immediately restates and defines it in these terms:

"That is to say, that the officers of the said Denver, Memphis & Atlantic Railway were to act under the direction and control of the said Fitzgerald & Mallory Construction Company in securing or attempting to secure, by condemnation proceedings and otherwise, the necessary right of way. \* \* \* "

If the first statement of the understanding was not defective, or of doubtful meaning, the last was not necessary, and the pleader did a vain

thing to insert it. The last statement controls. But neither statement of the new agreement imposed on the Construction Company the duty of securing the right of way over the government lands. To secure the right of way through the public lands, the act of congress requires the railroad company to file "with the secretary of the interior a copy of its articles of incorporation, and due proof of its organization under the same," and "file with the register of the land-office for the district where such land is located a profile of its road." Act March 3, 1875, (18 U. S. St. 482.) The act of congress requires the railroad company to do these things. The Denver Company must be held to know the law, and therefore to know the requirements of the act of congress. The railroad company, and not the Construction Company, had the possession and custody of its articles of incorporation and proof of its organization, and it alone could determine the "profile of its road" and furnish an authentic copy. Whether the new agreement was that the Construction Company "should have the right to use the name of the Denver Company to the extent that it was lawful" in procuring the right of way, as first stated; or whether it was that the "officers" of the Denver Company "were to act under the direction and control of the" Construction Company in procuring the right of way, as last stated, is immaterial. It was not "lawful" or possible for the Construction Company to do the things required by the act of congress to secure the right of way over the government lands; and the railroad company will not be heard to complain that the Construction Company did not give "direction" to the officers of the railroad company to do that which the act of congress itself plainly told them to do, and which they alone could do.

But assuming that it was legally possible for the Construction Company to secure the right of way over the government lands, and that it was under a binding obligation to do so, this was a duty it owed to the Denver Company, and not to the defendant; and a breach of its obligation in this regard can boot the defendant nothing in this suit. It is not material to inquire what redress the law would afford the Denver Company for a breach of such an obligation. That company is not a party to this suit, and the defendant does not stand in its shoes, and cannot avail itself of its rights, as it is ingeniously attempting to do. It is not pretended that the stock and bonds sold and delivered to the defendant under the contract are not such as the contract calls for. They are legal and valid obligations of the Denver Company, and by the act of sale the Construction Company warranted nothing more. It did not warrant the title of the Denver Company to its right of way. The defendant got exactly what it contracted for, but complains that the Denver Company has an imperfect title to a part of its right of way. How this fact has damaged the defendant, or constitutes a "failure of consideration" for the stock and bonds it purchased, is not shown. The owner of all the stock and bonds of a corporation does not own the corporate property. The corporate property, which includes all rights of action and claims for damages, belongs to the corporation, and is subject to the management and control of its board of directors. And if it be

conceded that the defendant owns all the stock and bonds of the Denver Company, that fact gives it no title to or interest in the right of way or other property of that company, which it can make the basis of an action or plea in its own behalf. If the Construction Company is answerable to any one for the defective title to the right of way, it is to the Denver Company, and not to the defendant. Nor is this all. It is not even alleged that the Denver Company has been disturbed in its use and enjoyment of the right of way over the government lands, or that it has been compelled to pay, or has paid, anything on account thereof, or that the Denver Company has defaulted in the payment of the principal or interest of its bonds, or that it is insolvent, or that the defendant still owns the stock and bonds. The defendant's answer is bad, and must be so held, without reference to the act of congress. No federal question can arise on an answer irremediably bad in substance. Moreover, if the answer set up a valid contract on the part of the Construction Company to procure the right of way over the public lands of the United States, and averred a breach of that contract, and it sufficiently appeared that the Construction Company was liable to account to the defendant for that breach, (and this, as we have seen, is assuming much more than is shown by the defendant's answer,) these facts would not show that there was a federal question in the case that would warrant its removal. In the case supposed, a denial that the Construction Company procured the right of way over the lands of the United States would probably result in an issue of fact, and, if that was found in favor of the defendant, then an issue of law as to the legal effect of such failure. But this is not enough. The answer or petition for removal would have to go further, and show that the construction of the act of congress relating to the mode of procuring the right of way was in dispute between the parties, and this must be done by stating facts that prove it. A simple averment that the fact is so is stating a conclusion, and is not enough. *Water Co.* v. *Keyes*, 96 U. S. 199.

If there is no dispute between the parties as to the meaning of an act of congress, there is no federal controversy between them, and no cause for removal. The supreme court has settled the rule on this subject. The court, speaking through Chief Justice WAITE, says:

"A cause cannot be removed from a state court simply because, in the progress of the litigation, it may become necessary to give a construction to the constitution or laws of the United States. The decision of the case must depend upon that construction. The suit must, in part, at least, arise out of a controversy between the parties in regard to the operation and effect of the constitution or laws upon the facts involved." *Water Co.* v. *Keyes, supra.*

The facts in that case and Mr. Justice BRADLEY's dissent show the question was fully considered, and that the opinion expresses the deliberate and well-considered judgment of the court on this point. The circuit court cases are to the same effect: *Trafton* v. *Nougues*, 4 Sawy. 174; *Austin* v. *Gagan*, 39 Fed. Rep. 626; *State* v. *Railroad Co.*, 33 Fed. Rep. 391; *Rothschild* v. *Matthews*, 22 Fed. Rep. 6.

It is urged by counsel for the defendant that if it is doubtful whether the cause is removable, the doubt should be resolved in favor of the

jurisdiction of this court. But the converse is the rule. When it is settled that the jurisdiction of the court in a removal cause is doubtful, all doubt as to what the court should do is dispelled, and the cause will be remanded. This rule is in harmony with the spirit and design of the act of congress. Congress has gone as far as it can to diminish the evils resulting from questions of disputed or doubtful jurisdiction in such cases by repealing the act which allowed an appeal or writ of error from an order remanding a cause. Under the existing law, an order remanding a cause eliminates the question of jurisdiction from the case, and remits it to the state court for trial upon its merits. If it turns out on the trial of the cause in the state court that it involves a federal question, and the right claimed under the federal law is denied to the party claiming it, the judgment of the state court on that question may be reviewed in the supreme court of the United States. But the order remanding the cause is not subject to review, and the case is finally disposed of on its merits, and the litigation ended. On the other hand, the erroneous assumption of jurisdiction in a removal cause works serious hardship. After the delay and expense incident to the preparation and trial of a case on its merits, the beaten party may take the case to the supreme court, where it must be reversed for want of jurisdiction, and remanded to the state court. Even the party who removes the case is not bound by his own act, but, if beaten on the merits in the circuit court, may appeal to the supreme court, and will there be heard to say that the circuit court erred in taking jurisdiction of the case, though it did so on his own petition; and after years of expensive litigation the parties to a suit improperly removed from the state court find themselves just where they were when the cause was removed. Everything done in the case after removal counts for nothing; the case is no nearer an end on its merits than when it was begun.

If the refusal to remand, like the order to remand, settled for all time the question of jurisdiction, and the case was retained for trial on its merits only, there would be more reason for contending that the doubt should be resolved against remanding the case. But, as we have seen, if the case is retained, the question of jurisdiction remains an issue for final determination in the supreme court on the appeal of the party beaten on the merits in the circuit court. The case of *First Nat. Bank of Chicago* v. *Corbin*, also entitled *Graves* v. *Corbin*, .132 U. S. 571, 591, 10 Sup. Ct. Rep. 196, serves to illustrate the injustice and hardship likely to result from resolving doubts in favor of the removability of cases. That case was removed from the state court into the circuit court on the petition of the bank, a defendant. Upon final hearing on the merits there was a decree in favor of the plaintiff, and against the bank, and it appealed to the supreme court, and in that court made the point that the circuit court acquired no jurisdiction of the cause by the removal on its own petition. Against this inconsistent, and what may justly be termed unconscionable, action of the bank, the plaintiff protested, but his protest was in vain. The court said:

"It is suggested that it is a hardship to the plaintiff to reverse his decree for want of jurisdiction in the circuit court after he has prosecuted his suit

in that court successfully, on his being taken into that court adversely more than six years ago."

But the court could not relieve from the hardship, and the judgment had to be reversed for want of jurisdiction, and the cause remanded to the state court. The benefit of a reasonable doubt should never be given to a practice that protracts and fosters litigation and multiplies costs. The sound rule on this subject is stated by Judge LOVE in *Kessinger* v. *Vannatta,* 27 Fed. Rep. 890. That learned and experienced judge said:

"It is the constant practice of this court to remand causes brought here from the state courts in cases of doubtful jurisdiction. The reason of this practice is obvious and conclusive. In the first place, the jurisdiction of the state court is unquestionable. It is, at least, concurrent with this court. But the jurisdiction of this court depends upon special facts, and it is in the present case, to say the least, doubtful. It is the safer and wiser course to send a cause for trial to a court of unquestionable jurisdiction, rather than retain it here, and go through all the forms of trial, when the jurisdiction is doubtful."

It is needless to say the case at bar is not a doubtful one. It is perfectly clear it must be remanded, and it is so ordered.

The defendant the Missouri Pacific Railway Company will be required to pay the costs of removal, including all the costs incurred in the cause in this court.